DISABILITY RIGHTS ADVOCATES
STUART SEABORN (Bar No. 198590)
MELISSA RIESS (Bar No. 295959)
REBECCA SERBIN (NY State Bar No. 5273255)*
2001 Center Street, Fourth Floor
Berkeley, California 94704-1204
Telephone: (510) 665-8644
Facsimile: (510) 665-8511
sseaborn@dralegal.org
mriess@dralegal.org
rserbin@dralegal.org

Attorneys for Plaintiffs
*Admitted Pro Hac Vice

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| INDEPENDENT LIVING RESOURCE CENTER SAN FRANCISCO, a California non-profit corporation, JUDITH SMITH, an individual, JULIE FULLER, an individual, TARA AYRES, an individual, and COMMUNITY RESOURCES FOR INDEPENDENT LIVING, a California non-profit corporation,<br><br>        Plaintiffs,<br><br>v.<br><br>LYFT, Inc., a Delaware corporation,<br><br>        Defendant. | **Case No. 3:19-CV-01438-WHA**<br><br>**STIPULATION AND ORDER REGARDING DISCOVERY**<br><br>Judge: The Honorable William Alsup |

Plaintiffs Independent Living Resource Center San Francisco, Judith Smith, Julie Fuller, Tara Ayres, and Community Resources for Independent Living, and Defendant Lyft, Inc. (collectively, the "Parties") mutually seek to reduce the time, expense and other burdens of discovery of documents, things, and electronically stored information ("ESI"). Therefore, the Parties enter into this Stipulation regarding electronic discovery obligations in this action.

The Parties stipulate as follows:

**1. PRESERVATION NOT REQUIRED FOR ELECTRONICALLY STORED INFORMATION THAT IS NOT REASONABLY ACCESSIBLE**

Except as provided below, the Parties need not preserve the following categories of electronically stored information for this litigation:

  i. Data stored in a backup system for the purpose of system recovery or information restoration, including but not limited to, disaster recovery backup tapes, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely deleted or written over in accordance with an established routine system maintenance practice;
  ii. Voicemail messages;
  iii. Instant messages, such as messages sent on Slack or Google Hangouts;
  iv. Text messages, such as cell phone to cell phone SMS messages;
  v. Tickets of individual driver and passenger complaints (Zendesk, Desk);
  vi. Electronic mail sent to or from a personal digital assistant ("PDA"), smartphone (e.g., BlackBerry, iPhone), or tablet (e.g. iPad) provided that a copy of such email is routinely saved elsewhere;
  vii. Other electronic data stored on a PDA, smartphone, or tablet such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere;
  viii. Logs of calls made from cellular phones;
  ix. Deleted computer files, whether fragmented or whole;
  x. Data stored in random access memory ("RAM"), cache memory, or in

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

                temporary or cache files, including internet history, web browser cache and cookie files, wherever located;

    xi. Data stored on photocopiers, scanners, and fax machines;

    xii. Server, system, or network logs;

    xiii. Data stored on legacy systems that have been retired, so long as those retired legacy systems do not contain unique data, i.e., data that can only be found on those systems.

Notwithstanding the paragraph above, if on the date of this agreement either Party has a Policy that results in the routine preservation of any of the categories of information identified above, such Party shall continue to preserve such information in accordance with its Policy.

Nothing in this Stipulation and Order prevents any Party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of ESI are not reasonably accessible within the meaning of Rule 26(b)(2)(B).

## 2. FORM & MANNER OF PRODUCTION OF DOCUMENTS, THINGS, AND ESI

### A. Form of Production for Hard Copy Documents

Hard copy documents shall be scanned as searchable PDF images and reflect, without visual degradation, the full and complete information contained on the original document.

The Parties will make good faith efforts to: (1) scan an individual document, including attachments, as it existed in the original; (2) make all information that is in a hard copy document available in the scanned image, even if that requires scanning a page or document more than once (*i.e.*, for documents that contain fixed notes, such as post-it notes, the Parties will scan the pages both with and without the notes and those pages will be treated as part of the same document); and (3) maintain the relationship of documents in a document collection (*e.g.*, cover letter and enclosures, binder containing multiple documents) through the scanning process.

### B. Form of Production for ESI Generally

Unless otherwise specified, all documents, including e-mails with corresponding attachments, should be converted and produced as single page group IV TIF files (or color JPGs only when requested) with a corresponding .DAT load file. A unique production number ("Bates

number") should be branded on each TIF image.  **All such files shall be produced along with their associated searchable OCR text, metadata, and bibliographic information**.

Any file that is specifically requested in native format or that cannot be converted to TIF should be produced in its original native format with a link to the native file included in the NATIVELINK field within the .DAT file. A Bates-stamped, single page TIF placeholder indicating that the file was produced natively should be included as the corresponding image for the file that cannot be converted. The native file should be renamed to reflect the Bates number assigned to the corresponding TIF placeholder. Examples of files that should be provided in their native format include spreadsheets and multimedia files.

Produce only the most-inclusive emails in a thread, plus any emails within that thread that contain an attachment or only the emails within that thread that contain a unique attachment. All emails produced must also contain their corresponding attachments, if any.

With respect to ESI other than email, the Parties may use a widely accepted method of deduplication, such as using MD5 or SHA-1 hash values calculated before the files are collected for discovery and may produce only one copy for each custodian that has possession or custody of the file.

C. Structured or Aggregated Data – Databases, Enterprise Systems, and Third-Party Cloud Systems

The Parties will meet and confer to address the identification, searching, and production format of any responsive data contained in a database, other structured or aggregated data source, or third party cloud-based storage system. Prior to any such meet and confer, the Producing Party will provide sufficient information to enable the Requesting Party to evaluate the Producing Party's proposed method and format of production.

D. Metadata Format

The Parties will make good faith efforts to ensure that the metadata associated with responsive documents is produced in a .DAT load file that meets the requirements set forth in **Appendix A**.

    E.  <u>Bates Numbering</u>

For hard-copy documents scanned to searchable PDF and TIF files the Parties agree to produce all such documents with a legible, unique page identifier ("Bates Number") electronically "burned" onto the image in the lower right-hand corner or at a location that does not obliterate, conceal, or interfere with any information from the source document. The Bates numbering convention shall be in the format "XX########" where "XX" represents the producing party and "########" represents the eight-digit sequential number of the page being produced by the Party. For example, the first Bates labeled document produced by the Plaintiff should be labeled "ILRC00000001".

For native files (*e.g.* Excel spreadsheets), the Parties agree to meet and confer regarding the form of document identification. The Parties agree that unique identification is necessary for each native file produced, and that the Parties will endeavor to avoid undue burden depending on the size and format of the native file production.

## 3. METHODS TO REDUCE THE BURDEN OF DISCOVERY

    A.  <u>Identification Of Custodians And Sources</u>

Outside of the ESI identified in Section 1.A above, the Parties agree to meet and confer to identify appropriate sources of information (email, cloud, physical hard-drive, databases) and custodians to collect and search, applying the proportionality standard set forth in Fed. R. Civ. P. 26(b)(2)(C).

Prior to any such meet and confer, the Producing Party will provide sufficient information to enable the Requesting Party to evaluate the Producing Party's proposed sources and custodians.

    B.  <u>Phasing.</u>

The Parties agree to meet and confer regarding phasing of discovery, so that discovery occurs first from sources that most likely contain relevant and discoverable information, which may obviate the need for discovery from sources that are less easily accessible.

    C.  <u>Use of Search Criteria to Identify ESI</u>

The Parties agree to meet and confer if either believes that the use of search criteria or

analytic tools should be used to identify responsive ESI. This may include a Party conducting preliminary searches with suggested search terms to determine the number of "hits," and then further refining terms to be more or less inclusive.

### D. Data Reporting

The Parties agree to meet and confer if either party believes that electronic information requested is best presented in a summary format or may be filtered by querying an applicable database.

### E. Other Methods And Technology

The Parties agree to meet and confer about other methods and technology to help increase the efficiency and speed of production.

## 4. PRODUCTION MEDIA

The Parties agree to produce scanned documents and ESI as a ZIP attachment to an email or link to download via a secure File Transfer Protocol ("FTP"); or on a CD-ROM, a DVD, or a USB drive, thumb drive, or an external hard drive (the "Production Media"), depending on the volume of the production. Each piece of Production Media shall be labeled with: (1) the case number, (2) the producing Party's name, (3) the production date, and (4) the wave of production and the number of pieces in the wave (*i.e.*, a Party's first production of two CDs shall be labeled FIRST PROD, 1 of 2 and 2 of 2; the second production of one DVD shall be labeled SECOND PROD, 1 of 1).

## 5. IDENTIFICATION OF DISCOVERY REQUEST TO WHICH PRODUCTION IS RESPONSIVE

The Parties agree that they need not identify the discovery request to which a produced document or ESI responds at the time material is produced. The Parties will meet and confer regarding identification of specific documents or ESI, to the extent that it is necessary.

## 6. PRIVILEGE LOGS

The Parties agree that for each document, thing, or ESI withheld based on an asserted claim of privilege, the Party asserting the privilege must produce a privilege log pursuant to Fed. R. Civ. P. 26(b)(5)(a).

With respect to each communication for which a claim of privilege or work product is made, the asserting party must at the time of assertion identify:

    i.    all persons making or receiving the privileged or protected communication;

    ii.    the steps taken to ensure the confidentiality of the communication, including affirmation that no unauthorized persons have received the communication;

    iii.    the date of the communication;

    iv.    the subject matter of the communication; and

    v.    the location where the document was found.

For ESI, to the extent practicable, such information may be extracted from existing metadata.

Notwithstanding the provisions above, the Parties agree that email chains may be treated as one communication referencing the first-in-time e-mail, the last-in-time e-mail, and a list of all persons involved in the chain.

The Parties will meet and confer further regarding the logging of privileged, cloud-based documents, which may be sent via hyperlink, in order to establish parameters for a truncated privilege log.

## 7. INADVERTENT PRODUCTION OF DOCUMENTS

Pursuant to Fed. R. Evid. 502(d) and (e), the disclosure during discovery of any communication or information (hereinafter "Document") that is protected by the attorney-client privilege ("Privilege" or "Privileged," as the case may be) or work-product protection ("Protection" or "Protected," as the case may be), as defined by Fed. R. Evid. 502(g), shall not waive the Privilege or Protection in the above-captioned case, or any other federal or state proceeding, for either that Document or the subject matter of that Document, unless there is an intentional waiver of the Privilege or Protection to support an affirmative use of the Document in support of the party's claim or defense, in which event the scope of any such waiver shall be determined by Fed. R. Evid. 502(a)(2) and (3).

**8. CONFIDENTIALITY OF DISCOVERY MATERIAL**

The Parties stipulate that they will comply with the Protective Order entered in this case at ECF Document Number 35.

**9. REQUIREMENT TO CONFER**

Before filing any motion regarding the terms of this Stipulation and Order, compliance with this Stipulation and Order, or any other discovery dispute, the Parties will confer in a good faith attempt to resolve such disputes.

**10. MISCELLANEOUS PROVISIONS**

    A. The Stipulation may be executed in counterparts;

    B. The Effective Date of this Stipulation is the date on which it is executed by all Parties;

    C. This Stipulation may not be enlarged, modified, or altered except in writing signed by each Party;

    D. None of the meet and confer provisions of this Stipulation and Proposed Order shall be construed to extend the time within which a Party must respond to a discovery request; rather, such time frames shall be covered by the Federal Rules of Civil Procedure, as extended by stipulation, and the deadlines set by the Court's scheduling order;

    E. The terms of this Stipulation and Proposed Order are not exhaustive. Each Party reserves the right to subsequently request a meet and confer to address any matters concerning discovery in this litigation which have not been addressed herein.

Agreed by counsel for the Parties:

| DISABILITY RIGHTS ADVOCATES | FOLGER LEVIN LLP |
|---|---|
| */s/ Stuart Seaborn* | */s/ Jiyun Cameron Lee* |
| Stuart Seaborn<br>Attorneys for Plaintiffs<br>ILRC, et al. | Jiyun Cameron Lee<br>Attorneys for Defendant<br>LYFT, INC. |

**FILER'S ATTESTATION**

Pursuant to Civil Local Rule 5-1(i), I attest that concurrence in the filing of the document has been obtained from each of the other Signatories.

Dated: October 23, 2019

                                                */s/ Jiyun Cameron Lee*
                                                Jiyun Cameron Lee

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

PURSUANT TO STIPULATION, IT IS SO ORDERED.

DATED:  October 24, 2019.            _____
                                     William H. Alsup
                                     United States District Judge

## **APPENDIX A**

**DAT File Specifications**

i. The metadata chart below indicates the fields that should, to the best of the Parties' abilities, be provided in the DAT file.

ii. The first line of the .DAT file must be a header row identifying the field names

iii. The .DAT file must use the following default delimiters: Comma ¶ ASCII character (020), Quote þ ASCII character (254).

iv. Date fields should be provided in the format: mm/dd/yyyy.

v. Date and time fields must be two separate fields

vi. If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments.

vii. An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media. The text file must be named after the FIRSTBATES. Do not include the text in the .DAT file.

viii. For productions with native files, a LINK field must be included to provide the file path and name of the native file on the produced storage media. The native file must be named after the FIRSTBATES.

ix. BEGATTACH and ENDATTACH fields must be two separate fields

x. All associated text should be provided in a single directory and named after the starting Bates number of the document. There should be one text file per document.

**Folder Structure Specifications**

The folder structure of the deliverable should follow the below format:

i. PROD001 – top level directory which should be unique for every production deliverable

ii. DATA – subdirectory containing .DAT load file

iii. IMAGES – subdirectory containing single page TIF images or color JPGs if requested

iv. NATIVES – subdirectory containing files provided in native format

v.  TEXT – subdirectory containing all corresponding .txt files (extracted or OCR) without any additional subfolders.

**Metadata Specifications**

The following metadata should, to the best of the Parties' abilities, be provided in the .DAT file for all electronically-stored information produced.

| Field Name | Description | Example |
|---|---|---|
| FIRSTBATES | First Bates number of native file document/email | BATES0000001 |
| LASTBATES | Last Bates number of native file document/email<br>**The LASTBATES field should be populated for single page documents/emails. | BATES0000001 |
| ATTACHRANGE | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document | BATES0000001 - BATES0000015 |
| BEGATTACH | First Bates number of attachment range | BATES0000001 |
| ENDATTACH | Last Bates number of attachment range | BATES0000015 |
| PARENT_BATES | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document | BATES0000001 |
| CHILD_BATES | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document | BATES0000002; BATES0000014 |
| ALLCUSTODIAN | All custodians of the record, if global deduplication was applied during processing.<br><br>A revised ALLCUSTODIANS field must be provided in the form of an overlay for any documents affected by new custodians added to the database post-production. | Doe_John; Smith_Mary; Robinson_Jane |
| CUSTODIAN | Email: Mailbox where the email resided<br>Native: Name of the individual or department from whose files the document originated | Smith, John |

| FROM | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple entries | John Smith |
|---|---|---|
| TO | Recipient(s)<br>**semi-colon should be used to separate multiple entries | Smith_John:Doe_Jane [mailto:doejane@gmail.com] |
| CC | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries | Frank Thompson [mailto: frank_Thompson@gmail.com] |
| BCC | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries | John Cain |
| SUBJECT | Email: Subject line of the email<br>Native: Title of document (if available) | Board Meeting Minutes |
| IMPORTANCE | Importance property of email | High |
| SENSITIVITY | Sensitivity property of email | Confidential |
| FILE_NAME | Native: Name of the original native file, including extension | BoardMeetingMinutes.docx |
| DATE_SENT | Email: Date the email was sent<br>Native: (empty) | 10/12/2010 |
| TIME_SENT/TIME_ZONE | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion.<br>Native: (empty)<br>**This data must be a separate field and cannot be combined with the DATE_SENT field | 07:05 PM GMT |
| TIME_ZONE | The time zone in which the emails were standardized during conversion.<br>Email: Time zone<br>Native: (empty) | GMT |
| LINK | Hyperlink to the email or native file document<br>**The linked file must be named per the FIRSTBATES number | D:\001\ BATES0000001.msg |
| MIME_TYPE | The content type of an Email or native file document<br>as identified/extracted from the header | MSG |
| FILE_EXTEN | The file type extension representing the Email or native file document; will vary depending on the email format | MSG |
| AUTHOR | Email: (empty)<br>Native: Author of the document | John Smith |
| DATE_CREATED | Email: (empty)<br>Native: Date the document was created | 10/10/2010 |
| TIME_CREATED | Email: (empty)<br>Native: Time the document was created | 10:25 AM |

| | | |
|---|---|---|
| | **This data must be a separate field and cannot be combined with the DATE_CREATED field | |
| DATE_MOD | Email: (empty)<br>Native: Date the document was last modified | 10/12/2010 |
| TIME_MOD | Email: (empty)<br>Native: Time the document was last modified<br>**This data must be a separate field and cannot be combined with the DATE_MOD field | 07:00 PM |
| DATE_ACCESSD | Email: (empty)<br>Native: Date the document was last accessed | 10/12/2010 |
| TIME_ACCESSD | Email: (empty)<br>Native: Time the document was last accessed<br>**This data must be a separate field and cannot be combined with the DATE_ACCESSD field | 07:00 PM |
| PRINTED_DATE | Email: (empty)<br>Native: Date the document was last printed | 10/12/2010 |
| FILE_SIZE | Size of native file document/email in KB | 5,952 |
| PGCOUNT | Number of pages in native file document/email | 1 |
| PATH | Email: (empty)<br>Native: Path where native file document was stored including original file name. | J:\Shared\SmithJ\October Agenda.doc |
| INTFILEPATH | Email: original location of email including original file name.<br>Native: (empty) | Personal Folders\Deleted Items\Board Meeting Minutes.msg |
| INTMSGID | Email: Unique Message ID<br>Native: (empty) | <000805c2c71b$75977050$cb8306d1@MSN> |
| MD5HASH | MD5 Hash value of the document. | d131dd02c5e6eec4693d9a0698aff95c2fcab58712467eab4004583eb8fb7f89 |
| OCRPATH | Path to extracted text of the native file | TEXT/001/BATES00000001.txt |

1036227.5

*Independent Living Resource Center San Francisco et al. v. Lyft, Inc.*, **Case No. 3:19-CV-01438**
**Stipulation and Order Regarding Discovery**                                                                                                                 13

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644