DISABILITY RIGHTS ADVOCATES
STUART SEABORN (Bar No. 198590)
MELISSA RIESS (Bar No. 295959)
REBECCA SERBIN (NY State Bar No. 5273255)*
2001 Center Street, Fourth Floor
Berkeley, California 94704-1204
Telephone: (510) 665-8644
Facsimile: (510) 665-8511
sseaborn@dralegal.org
mriess@dralegal.org
rserbin@dralegal.org

Attorneys for Plaintiffs
*Admitted Pro Hac Vice

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

INDEPENDENT LIVING RESOURCE CENTER SAN FRANCISCO, a California non-profit corporation, JUDITH SMITH, an individual, JULIE FULLER, an individual, TARA AYRES, an individual, SASCHA BITTNER, an individual, and COMMUNITY RESOURCES FOR INDEPENDENT LIVING, a California non-profit corporation,

      Plaintiffs,

    v.

LYFT, Inc., a Delaware corporation,

      Defendant.

**Case No. 3:19-CV-01438-WHA**

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Date:    October 8, 2020
Time:    8:00 a.m.
Place:   Courtroom 12
Judge:  Honorable William Alsup

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1

**TABLE OF CONTENTS**

2   I.  INTRODUCTION ................................................................................................. 1

3   II. ARGUMENT ...................................................................................................... 2

4       A.  Lyft Is a Covered Entity Under Title III of the ADA. ............................ 3

5       B.  Plaintiffs Have Met Their Burden Regarding Their Reasonable
            Modification Claim. ................................................................................ 4

6
7           1.  Plaintiffs Have Requested Modifications to Lyft's Practices
                that Are Necessary to Ensure Plaintiffs Have Access to
                Lyft's On-Demand Transportation Service. ................................ 4

8
9           2.  Plaintiffs' Requested Modifications Are More than
                Reasonable When Considered in the Run of Cases. ................... 7

10      C.  Lyft's Assertions About the Reasonableness of the Requested
            Modifications Bely the Record. ............................................................. 9

11
12      D.  Lyft Fails to Meet Its Burden to Establish Any Defense. ..................... 12

13          1.  Lyft Has Not Even Attempted to Demonstrate that the Cost
                of the Proposed Modifications Would Be an Undue
                Burden. ...................................................................................... 12

14
15          2.  Lyft Cannot Show that Taking Actions Lyft Takes
                Regularly Would Constitute a Fundamental Alteration to
                Its Business Model. .................................................................... 13

16
17      E.  Lyft Attempts to Distort the Legal Framework. ................................... 15

        F.  Plaintiffs Have Standing. ..................................................................... 18

18  III. CONCLUSION ................................................................................................ 21

19

20

21

22

23

24

25

26

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1

**TABLE OF AUTHORITIES**

2

**Cases**

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*,
    603 F.3d 666 (9th Cir. 2010) ......................................................................................... 18

*Castelan v. Universal Studios Inc.*,
    No. CV 12-05481 BRO (AGRx), 2014 U.S. Dist. LEXIS 9092
    (C.D. Cal. Jan. 10, 2014) .............................................................................................. 17

*Celano v. Marriott Int'l, Inc.*,
    No. C 05-4004 PJH, 2008 WL 239306 (N.D. Cal. Jan. 28, 2008) ......................... 9, 20

*Chapman v. Pier 1 Imports (U.S.), Inc.*,
    631 F.3d 939 (9th Cir. 2011) ......................................................................................... 18

*Cotter v. Lyft, Inc.*,
    60 F. Supp. 3d 1067 (N.D. Cal. 2015) ............................................................................ 3

*Crawford v. Uber Techs., Inc.*,
    No. 17-CV-02664-RS, 2018 WL 1116725 (N.D. Cal. March 1, 2018) ....................... 3

*D'Lil v. Best W. Encina Lodge & Suites*,
    538 F.3d 1031 (9th Cir. 2008) ....................................................................................... 18

*Dahlberg v. Avis Rent A Car Systems, Inc*,
    92 F. Supp. 2d 1091 (D. Colo. 2000) .............................................................................. 7

*Doran v. 7-Eleven, Inc.*,
    524 F.3d 1034 (9th Cir. 2008) ....................................................................................... 18

*Enyart v. Nat'l Conference of Bar Examiners, Inc.*,
    823 F. Supp. 2d 995 (N.D. Cal. 2011) .......................................................................... 12

*Fortyune v. Am. Multi-Cinema, Inc.*,
    364 F.3d 1075 (9th Cir. 2004) ................................................................................. passim

*Galvez v. Automobile Club of Southern California*,
    No. SA CV 16-0887-DOC (KESx), 2017 U.S. Dist. LEXIS 214650
    (C.D. Cal. May 5, 2017) ............................................................................................. 6, 7

*Karczewski v. DCH Mission Valley LLC*,
    862 F.3d 1006 (9th Cir. 2017) ....................................................................................... 13

*Lentini v. California Ctr. for the Arts, Escondido*,
    370 F.3d 837 (9th Cir. 2004) ............................................................................... 1, 8, 13

*Mannick v. Kaiser Found. Health Plan, Inc.*,
    No. C 03-5905 PJH, 2006 WL 2168877 (N.D. Cal. July 31, 2006) .............................. 8

*Namisnak v. Uber Techs., Inc.*,
    444 F. Supp. 3d 1136 (N.D. Cal. 2020) ...................................................................... 3, 8

*Namisnak v. Uber Techs., Inc.*,
    No. 18-15860, 2020 WL 4930650 (9th Cir. Aug. 24, 2020) ....................................... 19

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*Nat'l Fed'n of the Blind of California v. Uber Techs., Inc.*,
  103 F. Supp. 3d 1073 (N.D. Cal. 2015) ...................................................................... 4

*Noel v. New York City Taxi and Limousine Comm'n*,
  687 F.3d 63 (2d Cir. 2012) ................................................................................... 16

*PGA Tour, Inc. v. Martin*,
  532 U.S. 661 (2001) ........................................................................................... 4

*Schulz v. Bay Area Motivate, LLC*,
  No. 19-cv-02134-MMC, 2019 U.S. Dist. LEXIS 209256
  (N.D. Cal. Dec. 3, 2019) ...................................................................................... 17

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ............................................................................................ 19

*Toomer v. City Cab Co.*,
  No. 2:04 CV 397 DAK, 2005 WL 67091 (D. Utah Jan. 10, 2005) ........................................ 16

*Toomer v. City Cab*,
  443 F.3d 1191 (10th Cir. 2006) .............................................................................. 16

*Weyer v. Twentieth Century Fox Film Corp.*,
  198 F.3d 1104 (9th Cir. 2000) ............................................................................... 16

*Wong v. Regents of the Univ of Cal.*,
  192 F.3d 807 (9th Cir. 1999) .................................................................................. 8

**Statutes**

42 U.S.C. § 12181 ............................................................................................... 4

42 U.S.C. § 12182 ...................................................................................... 4, 13, 17, 18

42 U.S.C. § 12184 ...................................................................................... passim

**Regulations**

28 C.F.R. § 36.104 ............................................................................................. 12

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

# I.   INTRODUCTION

At the time Plaintiffs filed this action, Lyft offered no wheelchair accessible service in the three Bay Area Counties at issue in this case. Stipulation Re: Facts and Authenticity of Documents ("Stip.") ¶ 23, ECF No. 68-1. And now, eighteen months later, Lyft still offers no accessible service in Alameda County or Contra Costa County and only offers two accessible vehicles in San Francisco. Stip. ¶¶ 29, 30. As a result, motorized wheelchair users in the Bay Area still do not have access to the on-demand, when-they-need it, where-they-need-it, transportation service Lyft has offered non-disabled riders for over seven years. Lyft's Motion for Summary Judgment ("Lyft's Motion") focuses on what it views as the challenges of including wheelchair accessible vehicles ("WAVs") in its transportation service in the Bay Area to distract from the reality that Lyft has done essentially nothing to try to include WAVs on its platform. Lyft knows the steps it needs to take to include WAVs because it has taken these steps in markets outside of the Bay Area. Rather than take these steps, Lyft asserts it is somehow exempt from the reasonable modification requirements of the Americans with Disabilities Act ("ADA").

Lyft is not exempt from federal law. Under Title III of the ADA, Lyft must make reasonable modifications to its on-demand transportation service where necessary to ensure persons with disabilities have access to that service—unless *Lyft* can prove that doing so would fundamentally alter its business. *Lentini v. California Ctr. for the Arts, Escondido*, 370 F.3d 837, 845 (9th Cir. 2004).

Here, Plaintiffs have met their burden on their reasonable modifications claim. It is undisputed that Plaintiffs need WAVs in order to access Lyft's on-demand transportation service. Stip. ¶ 1. And, the evidence demonstrates that Plaintiffs have suggested multiple reasonable modifications to Lyft's practices—modifications Lyft has already made in other markets and that Lyft's own expert confirms are within Lyft's business platform—in order to ensure wheelchair accessible vehicles are available to Plaintiffs. For example, Plaintiffs have suggested Lyft partner with rental car companies, market its WAV program, provide incentives to possible WAV drivers, contract with third-party WAV transit operators, or use a combination

1  of those methods to ensure access to WAV service in the Bay Area on its platform, as Lyft has

2  done with WAV in other markets and as it has done in connection with its standard, non-WAV

3  service. Stip. ¶¶ 9, 12; Declaration of Stuart Seaborn ("Seaborn Decl."), Ex. N at 2–4 (ILRCSF's

4  Supplemental Responses to Lyft's First Set of Interrogatories).

5        Lyft's assertion that Plaintiffs have failed to sufficiently identify a specific policy or

6  practice attempts to overcomplicate what is a straightforward case of disability discrimination.

7  Lyft has used and continues to use a variety of practices to build and maintain its transportation

8  service in the Bay Area. In doing so, Lyft has excluded Plaintiffs and other people who rely on

9  WAVs from that service.

10        Nor has Lyft met its burden of proving that providing access to WAV users by making

11  the proposed reasonable modifications would fundamentally alter its business or create an undue

12  financial or administrative burden. Indeed, Lyft's own evidence demonstrates that it could

13  feasibly make the requested modifications in the Bay Area as it has done in other cities—if it

14  were to try to do so. Further, Lyft's attempt to claim a statutory exemption from proposed

15  reasonable modifications involving its partnerships with rental car companies and third-party

16  WAV transit providers is a red herring based on a misreading of the statute.

17        Thus, Lyft's Motion is without legal and factual basis, and Plaintiffs respectfully request

18  that the Court deny it.

19  **II.    ARGUMENT**

20        Lyft's Motion attempts to distort and complicate the legal framework at issue in this case,

21  but it is not complicated. Lyft's failure to take essentially any steps of any kind to provide WAV

22  service in the Bay Area violates Title III of the ADA. Lyft is a covered entity under Title III

23  either because it is engaged in the business of transporting people under Section 12184 or

24  because it offers a public accommodation under Section 12182. As a result, Lyft is obligated not

25  to discriminate on the basis of disability in the "full and equal enjoyment" of its services. Under

26  either Section 12184 or Section 12182, the statute defines discrimination to include a failure to

27  make reasonable modifications in its policies, practices, or procedures when such modifications

28  are necessary to provide people with disabilities full and equal enjoyment of the entity's services.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   42 U.S.C. § 12184(b)(2)(A) (citing § 12182(b)(2)(A)(ii)). Lyft has violated this requirement.

2   Additionally, the four individual Plaintiffs and two Organizational Plaintiffs have been injured

3   by Lyft's discrimination, and each has standing to pursue their claims.[1]

4   **A.      Lyft Is a Covered Entity Under Title III of the ADA.**

5   Lyft is a covered entity under the ADA as a private entity primarily engaged in the

6   business of transporting people under 42 U.S.C. § 12184 or as a public accommodation under 42

7   U.S.C. § 12182. Lyft apparently does not dispute that it is covered by 42 U.S.C. § 12184 for the

8   purposes of this motion, Lyft's Motion at n.5, nor could it. It is undisputed that Lyft provides a

9   ridesharing transportation service in the Bay Area. Seaborn Decl., Ex. D, Muñoz Depo. at 14:19–

10  25.[2] Lyft states that its mission is to "[i]mprove people's lives with the world's best

11  transportation" and that it is "one of the larger and fastest-growing multimodal transportation

12  networks in the United States and Canada." Ex. E, LYFT00000235. Lyft is "singularly focused

13  on revolutionizing transportation," *id*. at LYFT00000237, and its corporate designee to testify

14  regarding Lyft's business model was not aware of whether Lyft offers any services that are not

15  transportation services. Seaborn Decl., Ex. M, Niedermeyer Depo. at 12:13–18; *see also*

16  *Crawford v. Uber Techs., Inc.*, No. 17-CV-02664-RS, 2018 WL 1116725, at *3–4 (N.D. Cal.

17  March 1, 2018) (denying Uber's motion for judgment on the pleadings regarding Uber's status as

18  an entity "primarily engaged in the business of transporting people" under the ADA); *Namisnak*

19  *v. Uber Techs., Inc*., 444 F. Supp. 3d 1136, 1141–43 (N.D. Cal. 2020) (finding that Uber's

20  argument that it is not a transportation provider "strains credulity"); *Cotter v. Lyft, Inc*., 60 F.

21  Supp. 3d 1067, 1078 (N.D. Cal. 2015) (outside of the ADA context, referring to Lyft's

22

23  [1] Plaintiffs bring an additional claim regarding Lyft's failure to remove barriers to its service,
    including the requirement that app users in the Bay Area must know to toggle "Wheelchair
24  Access" mode in settings to even see that WAV service may be an option. Lyft asserts without
    any basis that Plaintiffs are unable to bring such a claim because they have been deterred from
25  using the Lyft app, but this is not the case. However, Plaintiffs do not seek summary judgment
    on this claim, and it does not appear that Lyft does either.
26

27  [2] Exhibits A to T refer to exhibits to the Declaration of Stuart Seaborn filed concurrently with
    Plaintiffs' September 3, 2020 Motions for Partial Summary Judgment and Renewed Motion for
28  Class Certification. Exhibit U refers to the exhibit to the Declaration of Stuart Seaborn filed
    concurrently with this brief.

1   contention that it does not provide transportation services as "obviously wrong"). As a

2   transportation provider, Lyft is subject to the broad mandate of Section 12184 to provide "full

3   and equal enjoyment of specified public transportation services" to people with disabilities. 42

4   U.S.C. § 12184(a).

5       In the alternative, Lyft's transportation service falls within the expansive definition of

6   "public accommodation" in the ADA. 42 U.S.C. § 12182. The statute defines "public

7   accommodation" by reference to twelve broad categories, which "should be construed liberally

8   to afford people with disabilities equal access to the wide variety of establishments available to

9   the nondisabled." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 676–77 (2001) (citations and internal

10  quotation marks omitted). Lyft is a "private entity" whose operations affect commerce, 42 U.S.C.

11  §§ 12181(1), (6); and it owns, leases, or operates a "travel service," one of the covered forms of

12  public accommodation. 42 U.S.C. § 12181(7)(F); 42 U.S.C. § 12182. In "including 'travel

13  service' among the list of services considered 'public accommodations,' Congress clearly

14  contemplated that 'service establishments' include providers of services which do not require a

15  person to physically enter an actual physical structure." *Nat'l Fed'n of the Blind of California v.*

16  *Uber Techs., Inc.*, 103 F. Supp. 3d 1073, 1083 (N.D. Cal. 2015) (quoting *Carparts Distribution*

17  *Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 19 (1st Cir. 1994)).

18      **B.**   **Plaintiffs Have Met Their Burden Regarding Their Reasonable Modification Claim.**

19

20          1.   Plaintiffs Have Requested Modifications to Lyft's Practices that Are Necessary to Ensure Plaintiffs Have Access to Lyft's On-Demand Transportation Service.

21

22      As either a transportation provider under Section 12184 or travel service under Section

23  12182, Lyft is required to make "reasonable modifications in policies, practices, or procedures"

24  to achieve full and equal access for people with disabilities. 42 U.S.C. § 12184(b)(2)(A) (citing §

25  12182(b)(2)(A)(ii)).

26      As described in Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Motion"), to

27  establish that Lyft has violated the ADA by failing to provide requested reasonable

28  modifications, Plaintiffs must first establish that the requested modification is necessary.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082–83 (9th Cir. 2004). Here, Lyft does

2  not contest that Plaintiffs are persons with disabilities under the ADA and that they require

3  access to WAVs in order to travel by car because of their disabilities. Stip. ¶ 1. Lyft offers almost

4  no WAV service at present, and thus modifications that would ensure that WAVs are readily

5  available to Lyft users in the Bay Area Counties are necessary to ensure that Plaintiffs have

6  access to Lyft's transportation service. Lyft also does not dispute that Plaintiffs requested

7  modifications in a letter prior to filing this action, Stip. ¶ 9, and during the course of this

8  litigation, *see, e.g.*, Seaborn Decl., Ex. N at 2–4 (ILRCSF's Supplemental Responses to Lyft's

9  First Set of Interrogatories). These proposed modifications include offering incentives to drivers

10 to provide WAV rides, helping drivers access WAVs by facilitating rental opportunities,

11 contracting with a third-party company with accessible vehicles in their fleet, and incentivizing

12 van owners who drive for Lyft to convert their vehicles into WAVs. Stip. ¶ 9. Lyft also cannot

13 dispute that the requested modifications include modifications Lyft has previously made to its

14 practices in order to provide WAV service in other markets, Stip. ¶¶ 11, 12, showing that Lyft

15 understands that these modifications, or some similar modifications, are necessary to include

16 WAVs in Lyft's service.

17         Lyft erroneously asserts that Plaintiffs have failed to sufficiently identify the policy or

18 practice at issue in this case. That is not so. Lyft has used and continues to use a variety of

19 practices to build and maintain its transportation service, including using advertising, driver

20 incentives, and partnerships with rental car companies to facilitate prospective Lyft drivers'

21 obtaining vehicles to drive for Lyft. Plaintiffs' Motion at 2–3. In doing so, Lyft has excluded

22 Plaintiffs and other people who rely on WAVs in the Bay Area. This is far from an abstract

23 claim. Lyft allows independent contractor drivers to drive non-WAV vehicles on its platform in

24 the Bay Area, Stip. ¶ 4, but it does not allow similarly situated drivers with WAVs to provide

25 Lyft WAV service in the Bay Area. Stip. ¶ 43. Lyft has used advertising to recruit passengers

26 and drivers to build its non-WAV service, Seaborn Decl., Ex. D at 47:10–48:16; Ex. E at

27 LYFT00000275, but it has not done the same for its WAV service, Stip. ¶¶ 36, 42. Lyft has

28 rental car partnerships for non-WAV service, Ex. D at 36:7–19, but stopped its plans to launch a

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    rental car partnership that would have allowed drivers to rent WAV vehicles in the Bay Area.

2    Stip. ¶¶ 39–41.

3         And these are the very practices that Plaintiffs have asked Lyft to modify. Given the

4    combination of practices that Lyft uses to provide non-WAV service, it is true that Plaintiffs do

5    not seek for the Court to order Lyft to modify one of its practices as opposed to another. For

6    example, Lyft could provide WAV service in the Bay Area through a contract like the one it

7    currently has with First Transit to provide the San Francisco pilot program, but Plaintiffs do not

8    seek an order requiring Lyft to do so because the record reflects that Lyft has and thus can

9    provide WAV service through other means, such as by using driver incentives and rental car

10   partnerships. Stip. ¶¶ 12(b), (c).

11        Lyft offers no authority for the proposition that Plaintiffs were required to somehow point

12   to a specific practice beyond or different from the specific practices Lyft uses to provide non-

13   WAV service, and WAV service outside the Bay Area, in order to state their claim. The nature of

14   Lyft's business is that it uses a combination of practices to grow and maintain its service. For

15   example, Lyft does not merely offer a single, one-size-fits-all incentive for every driver on its

16   platform, but instead it uses data "from over one billion rides and over ten billion miles driven"

17   to "anticipate market-specific demand, enabling [Lyft] to create customized incentives for

18   drivers in local markets." Seaborn Decl., Ex. E at LYFT00000237. Lyft's "machine learning

19   algorithms continuously train [Lyft's] optimization models and dynamically incentivize drivers

20   to be on [Lyft's] platform when and where riders are seeking transportation." *Id*. at

21   LYFT00000242.

22        The cases Lyft cites for the idea that Plaintiffs' request was required to be more specific

23   do not support this point. For example, in *Galvez v. Automobile Club of Southern California*,

24   defendant already had a policy of providing customers with accessible transportation if they

25   requested it. No. SA CV 16-0887-DOC (KESx), 2017 U.S. Dist. LEXIS 214650, at *3 (C.D. Cal.

26   May 5, 2017). The Court rejected plaintiff's reasonable modification claim not because he failed

27   to lay out specific details of his proposal that defendant change their policy, but because he

28   essentially made no proposal at all, apart from apparently making a general assertion that

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  defendant should go beyond providing accessible transportation when requested and instead only

2  work with contractors who provide accessible transportation. *Id*. at *16–19.

3      In *Fortyune*, the plaintiff asked AMC Theaters "to ensure that he could be seated next to

4  his wife or another companion at the Theater," a request that "requires that AMC take steps to

5  remove from a companion seat any person who is not the companion of a wheelchair-bound

6  patron and who refuses to vacate that seat despite being asked to do so." 364 F.3d at 1083. The

7  Court made no indication that plaintiff's request needed to outline each of these steps, or that it

8  needed to insist that AMC take one particular set of steps to ensure plaintiffs' full and equal

9  access to AMC's Theaters as opposed to some other set of steps that could achieve that same

10  objective. *See also id.* at 1087 (observing that the resulting injunction did not need to specify

11  how AMC was required to meet this objective, and that "it is unclear why AMC seeks specific

12  direction as to the method of compliance with the district court's injunction, except as a means of

13  bolstering its principal position that it should not be required to modify its policy at all").

14      In *Dahlberg v. Avis Rent A Car Systems, Inc*, the deficiency with plaintiff's claim was not

15  that his reasonable modification request was not specific, but that he failed to make one. 92 F.

16  Supp. 2d 1091, 1108 (D. Colo. 2000) ("Dahlberg has neither suggested a modification to Avis'

17  system for handling reservations of hand-controlled cars nor has he produced evidence that a

18  modification would be reasonable in the run of cases.")

19      Lyft correctly states that "it is Plaintiffs who must point to evidence that the lack of WAV

20  service on Lyft's platform resulted from Lyft's failure to make a reasonable modification."

21  Lyft's Motion at 17, and Plaintiffs have clearly done so. It is evident from the record in this case

22  that there is no other possible culprit for Lyft's failure to include WAVs. In other words, if Lyft

23  made the modifications requested, those modifications would result in more robust WAV service

24  in the Bay Area Counties at issue.

25          2.    Plaintiffs' Requested Modifications Are More than Reasonable When
                  Considered in the Run of Cases.

26

27      It is Plaintiffs' burden to show that the requested modifications are reasonable. "Although

28  neither the ADA nor the courts have defined the precise contours of the test for reasonableness, it

is clear that the determination of whether a particular modification is 'reasonable' involves a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it." *Fortyune*, 364 F.3d at 1083 (quoting *Staron v. McDonald's Corp.*, 51 F3d. 343, 356 (2d Cir. 1995)). *See also Wong v. Regents of the Univ of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999). However, Plaintiffs do not have a high burden. They need only show evidence that they have requested reasonable modifications that are "reasonable in the general sense," meaning "evidence that the requested modification is reasonable in the run of cases." *Mannick v. Kaiser Found. Health Plan, Inc.*, No. C 03-5905 PJH, 2006 WL 2168877, at *12 (N.D. Cal. July 31, 2006) (quoting *Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1059 (5th Cir. 1997)). "Once the plaintiff meets the burden of showing that a modification is reasonable in the general sense," the burden shifts to the defendant to "make the requested modification unless the defendant pleads and meets its burden of proving that the requested accommodation would fundamentally alter the nature of the public accommodation." *Id*. (quoting *Colorado Cross Disability Coal. v. Hermanson Family Ltd. P'ship*, 264 F.3d 999, 1004 (10th Cir. 2001); *see also Lentini*, 370 F.3d at 843–44.

Plaintiffs have met this burden. It is evident that Plaintiffs' requested modifications are reasonable "in the run of cases" as they almost entirely include steps that Lyft has taken to provide WAV service outside of the Bay Area or to provide non-WAV service within the Bay Area. *See also Namisnak*, 444 F. Supp. 3d at 1142–43 (declining to dismiss plaintiffs' Section 12184 claim that Uber failed to provide reasonable modifications where the requested modifications included steps Uber had taken previously to provide WAV in other cities and to provide non-WAV service). While Plaintiffs have also suggested other possible modifications beyond what Lyft has chosen to do in the past, including incentivizing van owners who drive for Lyft to convert their vehicles into WAVs, Stip. ¶ 9, Plaintiffs do not seek that Lyft be required to make any particular modification. *See, e.g.*, Seaborn Decl., Ex. N at 2–4 (ILRCSF's Supplemental Responses to Lyft's First Set of Interrogatories).

Lyft knows it could make modifications to its policies that would allow it to provide

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   more robust WAV service in San Francisco, and *any* WAV service in Alameda or Contra Costa

2   County, because it has done so elsewhere. Plaintiffs ask Lyft to contract with a rental car

3   company, just as Lyft has done for non-WAVs, Ex. D at 36:7–19; as Lyft currently does for

4   WAVs in New York, Stip. ¶ 46; and as Lyft had planned to start doing with WAVs in the Bay

5   Area earlier this year before pausing that program. Stip. ¶¶ 39–41. Plaintiffs ask Lyft to offer

6   driver incentives, just as it has also done for non-WAVs, Ex. E at LYFT0000000311, and as it

7   has used for WAV drivers outside of the Bay Area, Stip. ¶ 12(c). Plaintiffs ask Lyft to use

8   partnerships with third-party companies that own WAVs, just as Lyft currently does in a limited

9   fashion in San Francisco, Stip. ¶¶ 23, 28, and as it has done to provide WAV service in markets

10  outside the Bay Area, Stip. ¶¶ 11, 12(a). The burden now shifts to Lyft to demonstrate that the

11  proposed modifications are not reasonable, and it is clear that Lyft cannot meet this burden when

12  it has made and continues to make many of the requested modifications elsewhere. *See Celano v.*

13  *Marriott Int'l, Inc.*, No. C 05-4004 PJH, 2008 WL 239306, at *18 (N.D. Cal. Jan. 28, 2008)

14  (finding that plaintiffs had established their reasonable modification claim in part because

15  although defendant was testing a "pilot program" consisting of the type of modifications

16  plaintiffs sought, "it has nevertheless refused to implement the same type of modification

17  accommodating plaintiffs at the courses it operates, and has conceded that the pilot program is of

18  a temporary nature.").

19      **C.      Lyft's Assertions About the Reasonableness of the Requested Modifications
             Belie the Record.**

20

21          Lyft makes a variety of spurious claims regarding the reasonableness of Plaintiffs'

22  requested modifications. Lyft emphasizes that demand for its pilot program has been very low,

23  but it fails to note that it has never advertised the pilot program, Stip. ¶ 36, and that it has failed

24  to take steps to increase demand for the program that it has successfully used in other markets,

25  Plaintiffs' Motion at 19–20. Lyft claims the Partner model, under which it contracts with third

26  parties that own WAVs, is not reasonable because it is too expensive, but this ignores that Lyft

27  believes it could lower the costs of the Partner model. *Id*.

28          Lyft states it is not reasonable to offer a rental car partnership that includes WAVs, and

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    then describes the rental car partnership it had planned to launch earlier this year. Lyft's

2    statement is further debunked by its own expert, Professor Rysman, who identified the rental car

3    partnerships as being within Lyft's platform business model. Seaborn Decl., Ex. U, Rysman

4    Depo. 14:15–15:20; 34:19–35:10. Lyft also claims that a rental car partnership is not guaranteed

5    to work because Lyft uses a WAV rental partnership in New York in conjunction with other

6    models, but Plaintiffs do not ask that Lyft be required to provide WAV service solely through a

7    rental car partnership. Further, while Plaintiffs cannot know whether a rental car partnership is

8    guaranteed to attract a particular number of drivers, it defies logic that Lyft would have planned

9    to launch such a partnership in the Bay Area without having reason to believe it would succeed

10   in bringing more WAV drivers to the Lyft platform.

11        Lyft's claim that modifications must be "moderate" as defined by Lyft in order to be

12   reasonable is a standard of its own invention. The cases Lyft cites make it clear that a

13   determination of reasonableness is a fact-specific inquiry that depends in part on the nature of the

14   covered entity. Here, where Lyft is a multi-billion dollar, publicly traded company, Seaborn

15   Decl., Ex. E at LYFT00000236, it is reasonable that Lyft would be able to take greater action or

16   expend more resources than a far smaller entity.

17        Further, to the extent Lyft attempts to rely on Professor Rysman's attempt to approximate

18   the number of WAV drivers and rides needed to match the ride-density of Lyft's non-WAV

19   rides, those findings shed little light on the reasonableness of the requested modifications at

20   issue.[3] First, Professor Rysman's analysis did not even consider the existence of vehicles

21   available through rental partnerships or WAV transit provider partnerships, Seaborn Decl., Ex.

22   U, Rysman Depo. at 22:6–16; 23:21–24:7, despite the fact that Lyft has used those methods

23   elsewhere and has either used or planned to use both methods to provide WAV service in the

24

25   [3] Additionally, Lyft's unsupported suggestion that there could be some shortage of WAV
     vehicles, or non-WAV vehicles capable of being modified into WAV vehicles, or that Plaintiffs
26   have failed to prove that such a shortage does not exist, are confounding. Lyft seems to rely on
     anecdotal discussion from the Plaintiffs about the number of people they personally know who
27   own WAV vehicles, but this is hardly a reasonable proxy for the number of WAVs that exist in
     the Bay Area or non-WAVs that could be modified in the region. Further, Professor Rysman
28   stated that he understood "there to be no, literally, no data on how many WAV vehicles exist in
     the San Francisco Area." Seaborn Decl., Ex. U, Rysman Depo. at 20:22–21:8.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    Bay Area—and despite the fact that Professor Rysman confirmed he considers the rental

2    partnership model to be part of Lyft's platform business model. *Id*. at 34:7–35:10. Rather, his

3    entire analysis focused only on independent contractors driving personally owned vehicles. *Id*. at

4    22:6–10.

5          Second, Professor Rysman only assessed the prospect of whether independent contractors

6    using personally owned WAVs could provide WAV users with five-minute wait times, or

7    essentially the same wait times as it provides for non-WAV users. *Id*. at 15:21–17:25; 65:14–

8    66:9. He did no analysis of the number of rides that would be required to provide wait times that

9    are any amount longer than Lyft's non-WAV wait times, be that six-minute or eight-minute or

10   fifteen-minute wait times. *Id*. at 20:6–12. And, while Plaintiffs seek on-demand transportation

11   service that is comparable to what Lyft provides non-disabled passengers, Plaintiffs do not seek

12   perfection and are willing to consider slightly longer wait times if the provision of identical wait

13   times is not feasible through reasonable modifications to Lyft's practices.

14         Additionally, while Professor Rysman's report focuses on conditions in which Lyft's

15   platform functions optimally, and while Lyft claims that its marketplace "functions optimally in

16   areas of high population density, such as San Francisco, where riders can expect to get a ride

17   nearly any time, day or night," Lyft's Motion at 2, Lyft does not operate its marketplace only in

18   such ideal conditions. Indeed, Lyft estimates that its transportation service is available to more

19   than 95% of the United States population. Seaborn Decl., Ex. E at LYFT00000235. It cannot be

20   unreasonable for Lyft to provide WAV service merely because the density of WAV riders does

21   not allow Lyft to operate in optimal market conditions when Lyft operates its marketplace in

22   many areas outside of cities like San Francisco, including throughout Alameda and Contra Costa

23   Counties. Stip. ¶ 5.[4]

24         Thus, Professor Rysman's conclusions do nothing to demonstrate that Lyft could not

25   make reasonable modifications in this matter, or that those reasonable modifications would not

26

27   ───────────────────────
     [4] Professor Rysman's report also failed to take into account that WAV vehicles on the Lyft
28   platform can be cross-dispatched or used to provide ride modes other than WAV. Seaborn Decl.,
     Ex. U, Rysman Depo. at 25:19–26:5.

1    lead to Lyft's provision of more robust WAV service in the Bay Area.

2               **D.    Lyft Fails to Meet Its Burden to Establish Any Defense.**

3          Lyft emphasizes its belief that making the requested modifications could be expensive,

4    difficult, and not guaranteed to succeed, or not guaranteed to succeed to the same extent as Lyft's

5    non-WAV service. None of these general concerns are defenses to complying with Lyft's

6    obligations under Title III. Lyft has asserted a fundamental alteration defense, an applicable

7    affirmative defense under Title III, and appears to assert an undue burden defense, but it fails to

8    meet its burden to prove either.

9               1.    Lyft Has Not Even Attempted to Demonstrate that the Cost of the
                        Proposed Modifications Would Be an Undue Burden.

10

11          Lyft emphasizes that WAV vehicles, and some of the request modifications, are

12   expensive. But Lyft has made no attempt to actually establish that any related expenditures

13   would constitute an undue burden under the statute. Under the ADA's regulations, "[u]ndue

14   burden means significant difficulty or expense." 28 C.F.R. § 36.104. "In determining whether an

15   action would result in an undue burden, factors to be considered include . . . [t]he nature and cost

16   of the action needed under this part; . . .[t]he overall financial resources of the site or sites

17   involved in the action. . . . [i]f applicable, the overall financial resources of any parent

18   corporation or entity; the overall size of the parent corporation or entity with respect to the

19   number of its employees; [and] the number, type, and location of its facilities." *Id*. "[C]ases

20   finding undue burden demonstrate it is a high bar." *Enyart v. Nat'l Conference of Bar*

21   *Examiners, Inc.*, 823 F. Supp. 2d 995, 1014 (N.D. Cal. 2011).

22          Lyft has made no such showing. For example, Lyft offers no evidence comparing the cost

23   of any requested modification with Lyft's overall financial resources. Instead, Lyft repeats that

24   WAV vehicles are expensive and that it has sometimes spent what it views as large sums to

25   include WAVs on its platform outside of the Bay Area. Similarly, even Lyft's description of its

26   past expenditures is misleading as it fails to address the testimony from Lyft employees that Lyft

27   believes it could spend less on WAV service, either as the result of an upcoming RFP process, or

28   because it has taken steps to increase demand and believes that increased demand would

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

ultimately lower the cost of offering WAVs. Plaintiffs' Motion at 19–20. Lyft also fails to account for the potential significant offset of WAV-related expenses it is eligible to receive from the CPUC if it meets certain service requirements. Stip. ¶ 51. Indeed, Lyft estimated that it could receive between ███████████ in offset monies from the CPUC if it provided WAV service in California sufficient to meet the CPUC's service standards. *Id*. In failing to conduct any of the relevant analysis, Lyft fails to establish an undue burden defense.

        2.   <u>Lyft Cannot Show that Taking Actions Lyft Takes Regularly Would Constitute a Fundamental Alteration to Its Business Model.</u>

"Whether an accommodation fundamentally alters a service or facility is an affirmative defense." *Lentini*, 370 F.3d at 845. *See also Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1010 (9th Cir. 2017). As an entity covered under either Section 12182 or Section 12184, Lyft is required to make reasonable modifications to its policies, practices, and procedures to afford access to its services, unless "the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. §§ 12182(b)(2)(A)(ii); 12184(b)(2)(A).

Lyft provides an app-based, on-demand transportation service. Plaintiffs are not asking Lyft to change the type of service they provide. Further, the specific modifications Plaintiffs seek largely involve taking steps that Lyft regularly takes in the course of operating the non-WAV portions of its business. Lyft casts itself as the passive facilitator of a "marketplace" for drivers and riders but ignores the myriad actions it has taken to build and maintain that platform, including using advertising, incentives, and offering rental car partnerships to facilitate drivers' acquiring vehicles to drive for Lyft. It strains credulity to suggest that it would "fundamentally alter" the nature of Lyft's business if Lyft included WAVs in these same steps: using advertising to recruit WAV passengers and drivers instead of only non-WAV passengers and drivers, offering incentives to WAV drivers to join the platform instead of prohibiting WAV drivers from even joining the platform, and offering a rental partnership to facilitate drivers' acquiring WAVs in the same way Lyft offers such partnerships for non-WAVs. Lyft's argument also ignores that fact that its own expert identified rental car partnerships, one of the proposed modifications made

1    by Plaintiffs and adopted by Lyft in other regions to provide WAVs, as falling within Lyft's

2    platform business model. Seaborn Decl., Ex. U, Rysman Depo. at 14:15–15:6; 34:19–35:10.

3        Lyft claims it is forced to provide WAV service in a different way than it provides non-

4    WAV service because there is "no organic supply of WAVs on its platform," yet independent

5    contractor WAV drivers are not currently even eligible to provide WAV service on the Lyft

6    platform in the Bay Area. Lyft cannot purport to have evidence that no "organic" WAV drivers

7    would sign up to drive for Lyft when Lyft has not permitted them to do so and has taken no steps

8    to provide incentives to those drivers in the way it provides incentives for non-WAV drivers.

9    This claim also ignores that Lyft's non-WAV drivers are not all part of any "organic supply,"

10   and that indeed some drive vehicles for Lyft that they have obtained through Lyft's rental car

11   partnerships. *See* Seaborn Decl., Ex. U, Rysman Depo. at 22:20–22; 24:8–12.

12       While Lyft asserts that "the only reliable way it has found to provide the service Plaintiffs

13   want is the Partner model: contracting for a fixed supply of WAVs and drivers on the platform,

14   for an hourly rate paid by Lyft," Lyft's Motion at 22, this is not so. The record reflects that Lyft

15   has provided WAV service using a number of models, or a combination of these models. Stip. ¶¶

16   11, 12, 15. It is illogical for Lyft to suggest that it would continue to use models other than the

17   Partner model if the Partner model was actually "the only reliable way" to provide service.

18   Moreover, Lyft planned to launch a significant WAV rental program in the Bay Area in early

19   2020 that was to involve making up to 65 WAV vehicles available for rent, but paused this

20   program because of the pandemic. Stip. ¶¶ 39–41. It again makes little sense that Lyft would

21   plan to invest significantly in a program it knew would not be a reliable way to provide WAV

22   service.

23       Nor does Lyft's asserted belief that Plaintiffs are functionally seeking to require it to use

24   the Partner model support a fundamental alteration defense. First, Plaintiffs do not seek for Lyft

25   to be required to exclusively use the Partner model. Second, the record reflects that Lyft believes

26   other models of providing WAV service are at least somewhat effective because it continues to

27   use other models outside of the Bay Area and planned to try another model within the Bay Area

28   prior to the pandemic. Further, Lyft emphasizes that the Partner model is expensive, but again

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    ignores its stated belief that it could pay less to offer WAV service than it does currently,

2    Plaintiffs' Motion at 19–20, and that it could receive a significant CPUC offset if it meets the

3    CPUC's service requirements, Stip. ¶ 51. Lyft also suggests the expense of the Partner model

4    would alter Lyft's potential for revenue, but this again ignores that Lyft knows it could pay less

5    for the Partner model than it does now, that Lyft could offset some of these costs, and that Lyft's

6    overall business is not profitable. Plaintiffs' Motion at 19–20; Seaborn Decl., Ex. E. at

7    LYFT00000255. Finally, Lyft already uses the partnership model to provide WAVs in multiple

8    locations and points to no evidence that doing so has fundamentally altered its business. Thus,

9    Lyft cannot claim that expanding the use of the model in the Bay Area would somehow

10   fundamentally alter its business.

11             **E.**    <u>**Lyft Attempts to Distort the Legal Framework.**</u>

12             Lyft attempts to complicate this case by importing irrelevant portions of the ADA and its

13   regulations, but these provisions do not excuse Lyft from the requirement to make reasonable

14   modifications to ensure WAV users have access to Lyft's transportation service. First, Lyft

15   points to the provision under Section 12184 that defines discrimination under the statute to

16   include purchasing or leasing different types of new vehicles that are not accessible to people

17   who use wheelchairs, but exempting from that requirement the purchase or lease of new vehicles

18   "if the new vehicle is to be used solely in a demand responsive system *and* if the entity can

19   demonstrate that such system, when viewed in its entirety, provides a level of service to such

20   individuals equivalent to the level of service provided to the general public." 42 U.S.C. §

21   12184(b)(3), (b)(5). (emphasis added). Plaintiffs do not allege that Lyft has purchased new

22   vehicles that are not accessible. As a result, this provision and its exception are inapplicable to

23   the facts of this case.

24             However, even if this case involved the purchase of new vehicles, whether in response to

25   Plaintiffs' reasonable modification request or otherwise, Lyft could not use this exception to the

26   requirement that the new vehicles be accessible, unless Lyft could demonstrate that its

27   transportation system, "when viewed in its entirety, provides a level of service to [individuals

28   who use wheelchairs] equivalent to the level of service provided to the general public." *Id*. Lyft's

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  service in the Bay Area does not provide such equivalent service. Indeed, in two of the three

2  counties at issue, Lyft offers no service to individuals who need WAVs. Stip. ¶¶ 29, 30. Thus,

3  even in that scenario, the exception asserted by Lyft would not apply.

4      Lyft also mischaracterizes the Tenth Circuit's holding in *Toomer v. City Cab*, 443 F.3d

5  1191 (10th Cir. 2006). That case concerned the interpretation of the term "new" as used in 42

6  U.S.C. 12184(b), *id*. at 1194, and reviewed a District Court order regarding the ADA obligations

7  of taxi companies that purchased only used vehicles. *Toomer v. City Cab Co*., No. 2:04 CV 397

8  DAK, 2005 WL 67091, at *2 (D. Utah Jan. 10, 2005), *aff'd sub nom. Toomer v. City Cab*, 443

9  F.3d 1191 (10th Cir. 2006). In interpreting whether the ADA's requirement to purchase new

10  vans that are accessible was applicable to taxi companies that do not purchase new vans, the

11  Court of Appeals for the Tenth Circuit reviewed the structure of the ADA, noting that the

12  "general purpose of the ADA was to eliminate discrimination against people with disabilities"

13  but that Congress intended to balance this goal with cost considerations for businesses. *Id.* at

14  1195. It was in this context that the Court observed that "a taxi fleet consisting entirely of non-

15  accessible vehicles would be in accord with the ADA." *Id.* Here, where Lyft has purchased

16  neither new nor used vans, and where Plaintiffs do not seek for Lyft to purchase new or used

17  vans in the future, this case is inapposite. *See also Noel v. New York City Taxi and Limousine

18  Comm'n*, 687 F.3d 63, 73 & n.8 (2d Cir. 2012) (interpreting 49 C.F.R. § 37.29, a regulation

19  applicable only to "[p]roviders of taxi service").[5]

20      Next, Lyft points to the Ninth Circuit's opinion in *Weyer v. Twentieth Century Fox Film

21  Corp*., a case in which the Court interpreted the language of Section 12182 and stated that this

22  section of the ADA "does not require provision of different goods or services, just

23  nondiscriminatory enjoyment of those that are provided." 198 F.3d 1104, 1115 (9th Cir. 2000).

24  To the extent Lyft is a covered entity under Section 12184 as an entity primarily in the business

25

26

27

28

[5] To the extent Lyft wishes to assert that having contracts with third parties under the "Partner" model could be equivalent to purchasing vehicles or otherwise constitute vertical integration, Lyft offers no evidence that this is the case, and Lyft's expert testified that such a determination would require reviewing the specific contract at issue and that he did not do any such review or analysis. Seaborn Decl., Ex. U, Rysman Depo. at 68:6–71:9.

1   of providing transportation, which Lyft does not dispute, Lyft's Motion at n.5, and not Section

2   12182, this holding is irrelevant as Section 12184 contains no reference to goods or services. But

3   assuming Lyft is a covered entity under Section 12182, it is evident that this does not excuse

4   Lyft's failure to provide access to its transportation service. Plaintiffs do not seek for Lyft to

5   provide a different good or service—such as braille books.

6       Instead, Plaintiffs seek to access the same service that Lyft provides non-WAV users: on-

7   demand, app-based transportation. Lyft provides that service by using a variety of tools,

8   including marketing and technology, to recruit both drivers and passengers. *See* Section II(B)(1).

9   Plaintiffs ask that Lyft make reasonable modifications to their practice of denying access to

10  persons who would use the service but need WAVs. Plaintiffs do not ask that Lyft adopt or begin

11  offering a new or different service.

12      This is clearly distinguishable from the cases Lyft cites, such as where a plaintiff asked

13  an entity that owns and rents out goods such as bicycles to acquire different inventory, *Schulz v.*

14  *Bay Area Motivate, LLC*, No. 19-cv-02134-MMC, 2019 U.S. Dist. LEXIS 209256, at *19 (N.D.

15  Cal. Dec. 3, 2019), and where plaintiffs sought an order requiring a theme park to design a ride

16  that would not be subject to manufacturer's safety requirements—requirements the park was

17  obligated to follow under California law and which had the effect of excluding Plaintiffs because

18  they could not comply with the requirements to their disabilities, *Castelan v. Universal Studios*

19  *Inc.,* No. CV 12-05481 BRO (AGRx), 2014 U.S. Dist. LEXIS 9092, at *15, 18 (C.D. Cal. Jan.

20  10, 2014). The fact that Section 12182 requires covered entities to make reasonable

21  modifications makes it clear that the statute contemplates that entities will sometimes need to

22  alter a practice or policy in order to accommodate people with disabilities. This provision would

23  be nullified if every modification to a practice was viewed as requiring a change to the service

24  offered by the covered entity.

25      Additionally, the fact the ADA does not require provision of different goods or services

26  similarly does not excuse a covered entity's failure to make reasonable modifications. In the

27  parallel context of a covered entity's failure to provide auxiliary aids or services under 42 U.S.C.

28  12182(b)(2)(A)(iii), the Ninth Circuit explained that:

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1
2
3
4
5

> *Weyer* does not limit subsection 42 U.S.C. § 12182(b)(2)(A)(iii)'s requirement that a public accommodation provide auxiliary aids and services; the requirement that establishments provide auxiliary aids and services limits *Weyer's* general rule that public accommodations do not have to provide different services for the disabled. Although *Weyer* may be controlling in the provision of goods and services generally, here Plaintiffs are seeking an auxiliary aid, which is specifically mandated by the ADA to prevent discrimination of [sic] the disabled.

6   *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 671–72 (9th Cir.

7   2010).

8       As such, *Weyer* did not excuse the defendant movie theater from providing captioning

9   and audio descriptions at its films. *Id.* at 675. Lyft is similarly not excused from the parallel

10   provision of Section 12182 that further defines discrimination as a failure to make reasonable

11   modifications, 42 U.S.C. 12182(b)(2)(A)(ii).

12       **F.    Plaintiffs Have Standing.**

13       As described in Plaintiffs' motion, the four individual Plaintiffs and two Organizational

14   Plaintiffs have all established standing. Lyft's arguments to the contrary are unavailing. The

15   individual Plaintiffs are all people with disabilities who use WAVs and have been deterred from

16   using Lyft on specific occasions because they know it does not offer accessible service. At the

17   time Plaintiffs filed their complaint, Lyft offered no accessible service at all in the Bay Area.

18   Stip. ¶ 23. *See also D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1036 (9th Cir. 2008)

19   ("The evidence relevant to the standing inquiry consists of 'the facts as they existed at the time

20   the plaintiff filed the complaint.'") (citation omitted). While Lyft now offers its pilot program in

21   San Francisco, Plaintiffs remain deterred because the pilot is so limited in geographic scope and

22   otherwise.

23       The fact that Plaintiffs are deterred from accessing Lyft's services is an "actual injury"

24   for purposes of standing. *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1042 n.5 (9th Cir. 2008)

25   ("Once a disabled individual has . . . become aware of alleged ADA violations that deter his

26   patronage of or otherwise interfere with his access to a place of public accommodation, he has

27   already suffered an injury in fact traceable to the defendant's conduct and capable of being

28   redressed by the courts, and so he possesses standing under Article III . . . ." ); *Chapman v. Pier*

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   *1 Imports (U.S.), Inc.*, 631 F.3d 939, 950 (9th Cir. 2011) (en banc) ("We nevertheless concluded

2   that the plaintiff had Article III standing because 'a disabled individual who is currently deterred

3   from patronizing a public accommodation due to a defendant's failure to comply with the ADA

4   has suffered "actual injury" '" (quoting *Pickern v. Holiday Quality Foods Inc*., 293 F.3d 1133,

5   1138 (9th Cir. 2002)). *See also Namisnak v. Uber Techs., Inc.*, No. 18-15860, 2020 WL

6   4930650, at *3 (9th Cir. Aug. 24, 2020) (finding WAV users in an almost identical situation to

7   that facing Plaintiffs here had standing under a deterrence-based theory of injury under Title III

8   of the ADA).

9          The two Organizational Plaintiffs have standing both because Lyft's failure to offer

10  WAV service has injured the organizations and because each organization has at least one

11  member with standing to sue in her own right. See Plaintiffs' Motion at 24–25.

12         Lyft fails to acknowledge these facts establishing Plaintiffs' standing, arguing first that

13  Plaintiffs cannot have standing because their reasonable modification claims are insufficiently

14  specific. This is not so. *See supra* Section II(B).

15         Lyft next asserts that Plaintiffs' injury is not redressable by Lyft because it is

16  insufficiently specific, and thus any remedy would run afoul of the requirements of Rule 65 of

17  the Federal Rules of Civil Procedure. First, it is clear that Plaintiffs' injury is redressable because

18  Lyft has been able to redress it outside of the Bay Area, using some of the modifications that

19  Plaintiffs seek in this matter. *See, e.g.*, Stip. ¶¶ 18–22. While it is true that Lyft cannot guarantee,

20  for example, that a given number of drivers will decide to participate in a WAV rental car

21  partnership, this cannot excuse Lyft's failure to try. For example, in *Fortyune*, the Court found it

22  was reasonable for AMC Theaters to modify its policy to ensure that Plaintiff, a wheelchair user,

23  could sit next to his companion. The Court mentioned it was possible that an AMC patron could

24  refuse to move seats when asked, but "[e]veryday [sic] AMC enforces policies, both internal and

25  state-directed, that may require resort to the proper authorities. [Plaintiff's] requested policy

26  modification, like these others, is not unreasonable on the sole basis of this potentiality."

27  *Fortyune*, 364 F.3d at 1084. Plaintiffs must, and have, shown "a *likelihood* that the requested

28  relief will redress the alleged injury," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103

1    (1998) (emphasis added), not a literal guarantee that this will be the case.

2          Lyft also misconstrues the requirements of Rule 65. It is clear from the record that Lyft

3    knows how to include WAVs on its platform when it believes it is required to by local

4    regulation, but that it does not believe it is required to by the ADA. As such, Plaintiffs believe

5    that the parties would be able to reach a reasonable settlement in this matter after a finding of

6    liability. However, it is clearly within the power of this Court to fashion a remedy in the event

7    the parties are unable to reach a settlement. Such an injunction would need to describe the acts

8    Lyft has failed to take, such as failing to offer WAV service in Contra Costa or Alameda

9    Counties and offering vastly unequal service in San Francisco. It would then be up to Lyft to

10   determine specifically how to ensure it provides WAV users access to its on-demand

11   transportation service in the three Bay Area Counties at issue.

12         In *Fortyune*, AMC similarly argued that the injunction issued by the District Court in that

13   matter was improper under Rule 65 because it was insufficiently specific. The Court rejected

14   AMC's argument that "the district court must also elucidate *how* to enforce the injunction,"

15   noting that "Rule 65(d) does not require this of the district court." *Fortyune*, 364 F.3d at 1087.

16   The Court explained that the injunction was clear in describing the act or acts it sought to

17   restrain, namely that "it dictates that AMC must ensure that companions to wheelchair-bound

18   patrons be able to sit with their companions until ten minutes before the film begins. The

19   injunction is not, therefore, in violation of Rule 65(d), even though it declines to provide AMC

20   with explicit instructions on the appropriate means to accomplish this directive." *Id. See also*

21   *Celano*, 2008 WL 239306, at *21 (rejecting a "very similar" argument as AMC made in

22   *Fortyune*, declining to issue an injunction at that time so the parties could have an opportunity to

23   reach settlement, and noting that it was "disinclined to reach all of the features and precise

24   parameters advanced [by] Marriott . . . in any injunction that is entered").

25         The Court could do the same here, and thus it does not follow from Lyft's concerns about

26   the contours of a future injunction against Lyft that Plaintiffs have not shown a "reasonable

27   likelihood" that Lyft could address Plaintiffs' injuries. The individual Plaintiffs and

28   Organizational Plaintiffs each have standing to pursue their claims.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

III.    CONCLUSION

        For the foregoing reasons, Plaintiffs respectfully request that the Court deny Lyft's

Motion for Summary Judgment.


DATED:  September 17, 2020                Respectfully submitted,


                                         DISABILITY RIGHTS ADVOCATES

                                         _____
                                         Rebecca C. Serbin
                                         Attorneys for Plaintiffs

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644