DISABILITY RIGHTS ADVOCATES
STUART SEABORN (Bar No. 198590)
MELISSA RIESS (Bar No. 295959)
REBECCA SERBIN (NY State Bar No. 5273255)*
2001 Center Street, Fourth Floor
Berkeley, California 94704-1204
Telephone: (510) 665-8644
Facsimile: (510) 665-8511
sseaborn@dralegal.org
mriess@dralegal.org
rserbin@dralegal.org

Attorneys for Plaintiffs
*Admitted Pro Hac Vice

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDEPENDENT LIVING RESOURCE CENTER SAN FRANCISCO, a California non-profit corporation, JUDITH SMITH, an individual, JULIE FULLER, an individual, TARA AYRES, an individual, SASCHA BITTNER, an individual, and COMMUNITY RESOURCES FOR INDEPENDENT LIVING, a California non-profit corporation, <br><br> Plaintiffs, <br><br> v. <br><br> LYFT, Inc., a Delaware corporation, <br><br> Defendant. | Case No. 3:19-CV-01438-WHA <br><br> **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Date:    October 8, 2020 <br> Time:    8:00 a.m. <br> Place:   Courtroom 12 <br> Judge:  Honorable William Alsup |

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1

**TABLE OF CONTENTS**

2

3   I.   INTRODUCTION ..................................................................................................... 1

4   II.  ARGUMENT ........................................................................................................... 3

5        A.   Plaintiffs Have Met Their Burden Under the Legal Framework
6             Applicable to Their Claims. .......................................................................... 3

7        B.   Lyft Fails to Establish a Defense. ................................................................. 6

8        C.   Lyft's Attempt to Complicate the Legal Standard Are Unavailing. ............. 8

9        D.   Plaintiffs Have Standing. ............................................................................ 10

10       E.   Lyft's Concerns About the Scope of a Remedy Do Not Alter
             Plaintiffs' Standing. .................................................................................... 11

11  III. CONCLUSION ...................................................................................................... 13

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**TABLE OF AUTHORITIES**

**Cases**

*Celano v. Marriott Int'l, Inc.*,
  No. C 05-4004 PJH, 2008 WL 239306 (N.D. Cal. Jan. 28, 2008) ...................................... 6, 14

*Chapman v. Pier 1 Imports (U.S.), Inc.*,
  631 F.3d 939 (9th Cir. 2011) ................................................................................................. 11

*Cmtys. Actively Living Indep. & Free v. City of L.A.*,
  No. CV 09-0287 CBM RZX, 2011 WL 4595993 (C.D. Cal. Feb. 10, 2011)......................... 14

*D'Lil v. Best W. Encina Lodge & Suites*,
  538 F.3d 1031 (9th Cir. 2008) ............................................................................................... 11

*Dahlberg v. Avis Rent A Car Sys., Inc.*,
  92 F. Supp. 2d 1091 (D. Colo. 2000).........................................................................................9

*Doran v. 7-Eleven, Inc.*,
  524 F.3d 1034 (9th Cir. 2008) ............................................................................................... 11

*Fortyune v. Am. Multi-Cinema, Inc.*,
  364 F.3d 1075 (9th Cir. 2004) ..................................................................................... 4, 5, 9, 13

*Galvez v. Auto. Club of S. Cal.*,
  No. SA CV 16-0887-DOC (KESx), 2017 U.S. Dist. LEXIS 214650
  (C.D. Cal. May 5, 2017) ...........................................................................................................9

*Lentini v. Cal. Ctr. for the Arts, Escondido*,
  370 F.3d 837 (9th Cir. 2004) ....................................................................................................5

*Mannick v. Kaiser Found. Health Plan, Inc.*,
  No. C 03-5905 PJH, 2006 WL 2168877 (N.D. Cal. July 31, 2006) ...................................... 4, 5

*Namisnak v. Uber Techs., Inc.*,
  444 F. Supp. 3d 1136 (N.D. Cal. 2020) ....................................................................................5

*Namisnak v. Uber Techs., Inc.*,
  No. 18-15860, 2020 WL 4930650 (9th Cir. Aug. 24, 2020) ................................................... 12

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)................................................................................................................... 12

*Weyer v. Twentieth Century Fox Film Corp.*,
  198 F.3d 1104 (9th Cir. 2000) ................................................................................................ 10

*Wong v. Regents of the Univ of Cal.*,
  192 F.3d 807 (9th Cir. 1999) ....................................................................................................5

**Statutes**

42 U.S.C. § 12182................................................................................................................... 2, 3, 6

42 U.S.C. § 12184................................................................................................................... 3, 6, 10

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

## I.   INTRODUCTION

This is a straightforward case of disability discrimination under Title III of the Americans with Disabilities Act ("ADA"). Lyft denies people who need wheelchair accessible vehicles ("WAVs") access to its on-demand transportation service in the three Bay Area Counties at issue. Indeed, Lyft does not assert that it comes anywhere close to providing Bay Area wheelchair users comparable access to its on-demand transportation service. Plaintiffs have requested that Lyft modify its practices, as it has done in other regions, so that WAV users in the Bay Area will be able to access Lyft's transportation service. And Lyft has refused to even try to do so. Lyft has failed to show sufficient evidence to demonstrate that the requested modifications would fundamentally alter its business. As a result, Lyft is liable under Title III.

Lyft does not and cannot dispute the facts underlying Plaintiffs' *prima facie* case:

- Plaintiffs are people with disabilities who require WAVs to travel by car. Stipulation Re: Facts and Authenticity of Documents ("Stip.") ¶ 1.

- Lyft currently denies Plaintiffs access to its on-demand, app-based transportation service. Lyft offers no WAV service in Alameda or Contra Costa Counties, Stip. ¶ 30, two of the three Bay Area Counties at issue in this case. While Lyft currently provides some WAV service in San Francisco as part of a pilot program launched after Plaintiffs filed their Complaint, Stip. ¶ 23, the pilot does not provide equal hours of service, Stip. ¶¶ 5, 29, and is pursuant to a ███████████ with third-party First Transit ██████████████, Stip. ¶¶ 31, 32.

- Apart from the San Francisco pilot, Lyft has done nothing to try to provide WAV service in the Bay Area. Beyond the pilot, Lyft has failed to even try to use the methods it has used for providing WAV service outside of the Bay Area. Stip. ¶¶ 11, 12. Lyft does not currently permit drivers who own or otherwise have access to WAVs to provide WAV service for Lyft in the Bay Area. Stip. ¶ 43. While Lyft had previously planned to launch a sixty-five-vehicle WAV rental program in the Bay Area in 2020, it paused its plans to launch that program. Stip. ¶¶ 39–41.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

- When Lyft believes it is required to provide WAV service because of a local regulation, it does so. Stip. ¶¶ 10, 11. For example, in New York City, where Lyft agreed to wait-time requirements in its settlement of a legal challenge to New York City's regulatory scheme, Lyft has used a combination of methods to provide WAV service and successfully met those wait-time requirements in 2019. Stip. ¶¶ 18, 45, 46.

- Plaintiffs requested the modifications to Lyft's practices prior to filing this action. Stip. ¶ 9.

- According to testimony from Lyft's 30(b)(6) designee, Lyft knows the conditions that facilitate its ability to provide WAV service more cheaply, Declaration of Stuart Seaborn ("Seaborn Decl."), Ex. L[1], Deposition of Andres Muñoz, 74:16–77:3, 85:22–86:13, and it has not yet taken advantage of these conditions in the Bay Area, Plaintiffs' Motion at 19–20.

At least for purposes of this Motion, Lyft does not dispute that it is a covered entity under 42 U.S.C. § 12184, Lyft's Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Lyft Opp.") at n.4. Under that section of the ADA, and the similar section of 42 U.S.C. § 12182, Lyft is obligated to "make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii) (cross-referenced in *id.* § 12184(b)(2)(A)). In failing to make, or even try to make, the modifications Plaintiffs have requested in order to include WAVs on the Lyft platform, Lyft has violated this requirement.

Additionally, Lyft cannot assert that the cost of providing WAV service in the Bay Area would be unreasonable given the scope of its business, nor that it would fundamentally impede

---

[1] Exhibits A through T refer to exhibits to the Declaration of Stuart Seaborn filed concurrently with Plaintiffs' Motion for Partial Summary Judgment and Renewed Motion for Class Certification. Exhibit U refers to the exhibit to the Declaration of Stuart Seaborn filed concurrently with Plaintiffs' Opposition to Defendant's Motion for Summary Judgment.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  its business. The evidence shows that Lyft provides WAV service when it believes it is required

2  to do so, and there is no indication in the record that doing so has ever made a dent in Lyft's

3  ability to operate.

4          Because Lyft cannot dispute these facts, it attempts to muddy the legal standards and

5  import its own standards—arguing that it is somehow exempt from compliance. Yet, Lyft is not

6  exempt. And its attempt to import additional standards or exceptions without any basis in the

7  statute or case law rings hollow. The logical conclusion of Lyft's arguments is that Plaintiffs and

8  other people with disabilities who need WAVs would be forever shut out of this major transit

9  option that has become a significant part of how non-disabled people travel around the Bay Area.

10          Here, Plaintiffs do not seek a ruling only on liability because they have any doubt that the

11  Court could fashion an appropriate remedy. They do so because the record reflects that Lyft

12  knows how to stop discriminating when they believe they are obligated to. Plaintiffs thus have

13  every reason to believe this would be the same in the Bay Area.

14          Plaintiffs therefore respectfully ask that the Court grant Plaintiffs' Motion for Partial

15  Summary Judgment, finding Lyft liable for violating the ADA.

16  **II.   ARGUMENT**

17          **A.   Plaintiffs Have Met Their Burden Under the Legal Framework Applicable to
18               Their Claims.**

19          As either a transportation provider under Section 12184 or travel service under Section

20  12182, Lyft is required not to discriminate against people with disabilities in the "full and equal

21  enjoyment" of their services. 42 U.S.C. § 12184(a); *id.* § 12182(a). The statute defines

22  discrimination as including the failure to "make reasonable modifications in policies, practices,

23  or procedures" to achieve full and equal access for people with disabilities. *Id.* §

24  12182(b)(2)(A)(ii) (cross-referenced in *id.* § 12184(b)(2)(A)).[2]

25  _____

26  [2] Lyft's suggestion that 42 U.S.C. § 12184(a)'s and 42 U.S.C. § 12182(a)'s parallel requirements
    of "full and equal" access are inapplicable to a reasonable modification claim is plainly
    erroneous. 42 U.S.C. § 12184(b) specifically defines discrimination "for purposes of subsection
27  (a)," and includes the requirement for covered entities to make reasonable modifications. 42
    U.S.C. § 12184(b)(1)(2)(A). This is the same under the parallel requirement in 42 U.S.C.
28  § 12182(b)(2)(A)ii) (again defining discrimination "[f]or purposes of subsection (a)" as
    including the failure to make reasonable modifications).

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    As described in Plaintiffs' Motion for Partial Summary Judgment ("Plaintiffs' Motion"),

2 to establish that Lyft has violated the statute by failing to provide requested reasonable

3 modifications, Plaintiffs must first establish that the requested modification is necessary.

4 *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082–83 (9th Cir. 2004). Here, Lyft does

5 not contest that Plaintiffs are persons with disabilities under the ADA and that they require

6 access to WAVs in order to travel by car because of their disabilities. Stip. ¶ 1. Lyft offers almost

7 no WAV service at present, and thus modifications that would ensure that WAVs are readily

8 available to Lyft users in the Bay Area Counties are necessary to ensure that Plaintiffs have

9 access to Lyft's transportation service.

10    These proposed modifications include offering incentives to drivers to provide WAV

11 rides, helping drivers access WAVs by facilitating rental opportunities, contracting with a third-

12 party company with accessible vehicles in their fleet, and incentivizing van owners who drive for

13 Lyft to convert their vehicles into WAVs. Stip. ¶ 9. Lyft cannot dispute that the requested

14 modifications include modifications Lyft has previously made to its practices in order to provide

15 WAV service in other markets, Stip. ¶¶ 11, 12, showing that Lyft understands that these

16 modifications, or some similar modifications, are necessary to include WAVs in Lyft's service.

17    Though Plaintiffs have an initial burden to show the requested modifications are

18 reasonable, it is not a high burden. They need only show evidence that they have requested

19 reasonable modifications that are "reasonable in the general sense," meaning "evidence that the

20 requested modification is reasonable in the run of cases." *Mannick v. Kaiser Found. Health Plan,*

21 *Inc.*, No. C 03-5905 PJH, 2006 WL 2168877, at *12 (N.D. Cal. July 31, 2006) (quoting *Johnson*

22 *v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1059 (5th Cir. 1997)). Further, " . . . the

23 determination of whether a particular modification is 'reasonable' involves a fact-specific, case-

24 by-case inquiry." *Fortyune*, 364 F.3d at 1083 (quoting *Staron v. McDonald's Corp.*, 51 F3d. 353,

25 356 (2d Cir. 1995)). *See also Wong v. Regents of the Univ of Cal.*, 192 F.3d 807, 818 (9th Cir.

26 1999).

27    "Once the plaintiff meets the burden of showing that a modification is reasonable in the

28 general sense," the burden shifts to the defendant to "make the requested modification unless the

1  defendant pleads and meets its burden of proving that the requested accommodation would

2  fundamentally alter the nature of the public accommodation." *Mannick*, 2006 WL 2168877, at

3  *12 (quoting *Colo. Cross Disability Coal. v. Hermanson Family Ltd. P'ship*, 264 F.3d 999, 1004

4  (10th Cir. 2001)); *see also Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 843–44

5  (9th Cir. 2004).

6        Plaintiffs have met their burden. It is clear that Plaintiffs' requested modifications are

7  reasonable "in the run of cases" as they almost entirely include steps that Lyft has taken to

8  provide WAV service outside of the Bay Area and to provide non-WAV service within the Bay

9  Area. *See also Namisnak v. Uber Techs., Inc.*, 444 F. Supp. 3d 1136, 1142–43 (N.D. Cal. 2020)

10  (declining to dismiss plaintiffs' Section 12184 claim that Uber failed to provide reasonable

11  modifications where the requested modifications included steps Uber had taken previously to

12  provide WAV in other cities and to provide non-WAV service). While Plaintiffs have also

13  suggested other possible modifications beyond what Lyft has chosen to do in the past, including

14  incentivizing van owners who drive for Lyft to convert their vehicles into WAVs, Stip. ¶ 9,

15  Plaintiffs do not seek that Lyft be required to make any particular modification. *See, e.g.*,

16  Seaborn Decl., Ex. N at 2–4 (ILRCSF's Supplemental Responses to Lyft's First Set of

17  Interrogatories).

18        Lyft knows it could make modifications to its policies that would allow it to provide

19  more robust WAV service in San Francisco, and any WAV service in Alameda or Contra Costa

20  County, because it has done so elsewhere. Plaintiffs ask Lyft to contract with a rental car

21  company, just as Lyft has done for non-WAVs, Seaborn Decl., Ex. D at 36:7–19; as Lyft

22  currently does for WAVs in New York, Stip. ¶ 46; and as Lyft had planned to start doing with

23  WAVs in the Bay Area earlier this year before pausing that program. Stip. ¶¶ 39–41. Plaintiffs

24  ask Lyft to offer driver incentives, just as it has done for non-WAVs, Ex. E at

25  LYFT0000000311, and as it has used for WAV drivers outside the Bay Area, Stip. ¶ 12(c).

26  Plaintiffs ask Lyft to use partnerships with third-party companies that own WAVs, just as Lyft

27  currently does in a limited fashion in San Francisco, Stip. ¶¶ 23, 28, and as it has done to provide

28  WAV service in markets outside the Bay Area, Stip. ¶¶ 11, 12(a). The burden now shifts to Lyft

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   to demonstrate that the proposed modifications are not reasonable, and it is clear that Lyft cannot

2   meet this burden when it has made and continues to make many of the requested modifications

3   elsewhere. *See Celano v. Marriott Int'l, Inc.*, No. C 05-4004 PJH, 2008 WL 239306, at *18

4   (N.D. Cal. Jan. 28, 2008).

5               **B.      Lyft Fails to Establish a Defense.**

6               Lyft has failed to meet its burden to establish that making the reasonable modifications

7   requested by Plaintiffs would "fundamentally alter the nature of such goods, services, facilities,

8   privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii); *id.* §

9   12184(b)(2)(A). Plaintiffs do not ask for Lyft to offer a new service, but instead merely ask that

10  Lyft take many of the steps it regularly takes to provide non-WAV service and to provide WAV

11  service outside of the Bay Area in order to include WAVs in its on-demand transportation

12  service. *See also* Plaintiffs' Opp. at 13-15. Indeed Lyft's own expert agreed that a rental

13  partnership, one of the reasonable modifications requested by Plaintiffs and a mode of providing

14  WAV service that Lyft uses in New York City, Stip. ¶ 46, and previously planned to use in the

15  Bay Area, Stip. ¶¶ 39-41, falls within Lyft's platform business model. Seaborn Decl., Ex. U,

16  Rysman Depo. at 14:15–15:6; 34:19–35:10.

17              To the extent Lyft asserts a defense regarding the cost of including WAVs on its platform

18  or asserts that the cost of including WAVs makes the requested modifications unreasonable,

19  Lyft, a multibillion-dollar company, ignores the record in this case and distorts the modifications

20  at issue. Despite Lyft's assertion, Plaintiffs do not seek that Lyft rely only on the use of third-

21  party contractors to deploy WAVs twenty-four hours a day. There is no reason Lyft cannot rely

22  on a combination of modes as it has done previously. Stip. ¶ 15. Indeed, Lyft already uses a

23  combination of modes in addition to third-party partnerships to provide WAV service in New

24  York City, Stip. ¶ 46. Lyft also claims it planned to spend ▮▮▮▮▮▮▮▮▮ to conduct

25  its sixty-five-vehicle WAV rental program in the Bay Area, Lyft Opp. at 6. Surely Lyft cannot be

26  claiming that it planned to make this expenditure without having reason to believe it could

27  provide additional, reliable WAV service through this rental pilot.

28              Additionally, while Lyft describes the amount it has spent to provide WAV service that

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   meets agreed-to service level requirements in New York, Stip. ¶¶ 18, 45, it makes no indication

2   that these expenditures have made any dent in its overall financial situation or that these

3   expenditures have not been readily absorbed as part of Lyft's cost of doing business in that

4   market. This is not surprising, given the immense scope of Lyft's non-WAV service. *See, e.g.*,

5   Lyft's Motion for Summary Judgment ("Lyft's Motion") at n.3 (stating that Lyft provided more

6   than ████████ rides in New York City between October 2019 and March 2020).

7        These dollar amounts also do not take into account that the record shows Lyft could

8   lower the cost of providing WAV service, including by taking steps to increase demand,

9   Plaintiffs' Motion at 19–21, and that Lyft estimates it could qualify for up to ████████

10  in annual offset funds from the California Public Utilities Commission ("CPUC") if it met the

11  CPUC's requirements statewide, Stip. ¶ 51. Lyft has failed to establish that the cost of including

12  WAVs on its platform in the Bay Area would constitute too great a financial burden for Lyft, a

13  multibillion-dollar company, to easily manage. Finally, Plaintiffs do not seek perfection. If Lyft

14  could show that the cost of providing a particular level of service would constitute an

15  unreasonable burden, Plaintiffs would not ask Lyft to provide that level of service. But Lyft

16  cannot use that possibility as an excuse for throwing up its hands and doing next to nothing while

17  persons needing WAVs are excluded from the on-demand transportation service non-disabled

18  Bay Area residents have come to take for granted for more than seven years.

19        Furthermore, Lyft's suggestion that there is not demand for WAV service in the Bay

20  Area is belied by the record. Lyft cannot dispute that it has failed to take steps it knows would

21  increase participation in the pilot program, including removing the need for users to toggle

22  "Wheelchair Access" mode, a small change that resulted in demand for Lyft's WAV service in

23  New York approximately doubling, and advertising the service. Plaintiffs' Motion at 19–20. Lyft

24  notes that it did contact some advocacy groups regarding the service, but it does not dispute that

25  it did not do any paid advertising to market the pilot, Stip. ¶ 36, a clearly necessary step for

26  creating awareness of the program when the pilot was the first time Lyft had ever offered any

27  WAV service in the region, Stip. ¶ 23, and it was thus widely known amongst wheelchair users

28  that Lyft did not offer accessible service. *See, e.g.*, Declaration of Tara Ayres, ECF No. 45-16 at

1  ¶ 5, Declaration of Judith Smith, ECF No. 45-14 at ¶ 5.

2         If Lyft had actually wanted to assess the genuine demand for WAV service in the Bay

3  Area, it would have taken the steps it knew would increase awareness of the program, but it did

4  not do so. Indeed, the record reflects that Lyft knowingly suppressed demand for the program.

5  Plaintiffs' Motion at 19–20. Lyft's assertions about the difficulty it has faced recruiting WAV

6  drivers in other markets similarly do not excuse Lyft's failure to make any attempt to recruit

7  WAV drivers in the Bay Area, nor does its assertion that its efforts to recruit drivers in New

8  York City may have been aided by a local regulatory provision. And while Lyft asserts that there

9  may be a lack of available WAV vehicles, Lyft's own expert stated that he understands "there to

10  be no, literally, no data on how many WAV vehicles exist in the San Francisco Area." Seaborn

11  Decl., Ex. U, Rysman Depo. at 20:22–21:8.

12         **C.    <u>Lyft's Attempt to Complicate the Legal Standard Are Unavailing.</u>**

13         Lyft attempts to overcomplicate the legal standards applicable to this case because it

14  cannot win under the actual standards. Lyft suggests Plaintiffs were obligated to identify a more

15  specific practice than the specific practices that Plaintiffs have already identified, including

16  Lyft's failure to use the methods it has used to provide WAV service in other regions to provide

17  WAV service in the Bay Area counties, Lyft's existing policy of refusing to allow independent

18  contractor WAV drivers to join the platform[3], Lyft's failure to provide WAV rental opportunities

19  while providing non-WAV rental opportunities, and so forth. However, Lyft offers no case that

20  suggests such a standard. *See also* Plaintiffs' Opposition to Lyft's Motion for Summary

21  Judgment ("Plaintiff's Opposition") at 6–7. Lyft asserts that Plaintiffs were obligated to

22  enumerate specific details of how to implement their requested modifications to these practices,

23  but again cite no case for the idea that Plaintiffs must present the details of an implementation

24

25  _____
[3] Lyft asserts that it does not allow independent contractor WAV drivers to drive on its platform
26  in the Bay Area for the "simple reason" that the CPUC would require Lyft to meet requirements
regarding driver training and vehicle inspection in order to qualify for the CPUC offset. Lyft
27  Motion at n.11. This does not justify Lyft's refusal to allow WAV drivers on the platform,
particularly given that Lyft offers no explanation as to why it would be unable to meet the
28  relevant training and inspection requirements when doing so could allow it to qualify to receive
███████ of dollars in WAV expense offset from the CPUC. Plaintiffs' Motion at 20.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    plan apparently so specific as to include where Lyft should locate the vehicles that will be

2    involved, Lyft Opp. at 4, the number of available future WAV drivers, Lyft Opp. at 15, how Lyft

3    should handle training these drivers, Lyft Opp. at 16, how Lyft should manage vehicle inspection

4    of these vehicles, *id*., and so forth. Indeed, the cases Lyft cites merely confirm that Plaintiffs

5    have done more than enough—i.e., Plaintiffs need only to identify the policy or practice at issue

6    and propose reasonable modifications to that policy or practice. *Galvez v. Auto. Club of S. Cal.*,

7    No. SA CV 16-0887-DOC (KESx), 2017 U.S. Dist. LEXIS 214650, at *16–19 (C.D. Cal. May 5,

8    2017); *Dahlberg v. Avis Rent A Car Sys., Inc.*, 92 F. Supp. 2d 1091, 1108 (D. Colo. 2000);

9    *Fortyune*, 364 F.3d at 1083.

10   And, the record reflects that attempting to enumerate the specific details of a remedy

11   implementation plan would go against the way Lyft conducts its business, which is to combine a

12   variety of tools to build and shape its service. For example, a requirement that Plaintiffs state the

13   dollar amount that Lyft should offer prospective drivers as an incentive for driving on the Lyft

14   platform would make little sense given Lyft's assertion that it determines driver incentives

15   through an iterative process, harnessing its data and machine learning technology to customize

16   incentives to ensure there are drivers when and where passengers are seeking transportation.

17   Seaborn Decl., Ex. E at LYFT0000237, LYFT00000242.[4] Further, Lyft claims that it must make

18   only "moderate" modifications, Lyft Opp. at 19, but Lyft has invented this standard and cites no

19   case that adopts it.

20   Lastly, Lyft's claim that it is somehow exempt from including WAVs on its platform

21   because of provisions of the ADA regarding when a covered entity's decision to buy or lease

22   new, larger vehicles triggers requirement to acquire WAV vehicles is similarly unavailing.

23

24   ────────────────

[4] Lyft asserts that Plaintiffs "make clear that to achieve parity, they believe Lyft will need to

25   onboard approximately ▮▮▮▮ WAV drivers." Lyft Opp. at n.10. They most certainly do not.
     Plaintiffs cite to the number of Standard mode drivers on the platform merely to contrast with the

26   two WAV drivers currently providing service through the San Francisco pilot, Plaintiffs' Motion
     at 5, but do not suggest anywhere in their Motion that Lyft should have the same number of

27   drivers providing WAV service as Standard mode service. And, as described in Plaintiff's
     Opposition to Defendant's Motion, the Rysman Report illuminates little about Lyft's ability to

28   provide WAV service due to its narrow scope and failure to consider sources of WAV vehicles
     beyond those owned by WAV users. Plaintiffs' Opposition at 10–11.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    Those ADA provisions do not apply to this case, both because Plaintiffs do not allege that Lyft

2    purchased or leased any vehicles in violation of these provisions and because Lyft would not

3    qualify for an exemption under those provisions even if it had purchased or leased vehicles, as

4    Lyft cannot "demonstrate that [its transportation] system, when viewed in its entirety, provides a

5    level of service to such individuals equivalent to the level of service provided to the general

6    public." 42 U.S.C. § 12184(b)(3), (b)(5). Those provisions regarding the obligations of entities

7    that purchase or lease vehicles also do not obviate the entity's need to make reasonable

8    modifications to its policies and practices under the statute. *Id.* § 12184(b)(2)(A).

9            Lyft similarly distorts *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104 (9th

10   Cir. 2000), a case interpreting language regarding the provision of goods and services under 42

11   U.S.C. § 12182. To the extent Lyft is a covered entity under Section 12184 as an entity primarily

12   engaged in the business of providing transportation—which Lyft does not dispute for purposes of

13   this Motion, Lyft's Opposition at n.4—and not under Section 12182, *Weyer*'s holding is

14   irrelevant because Section 12184 contains no reference to goods or services. But assuming Lyft

15   is a covered entity under Section 12182, it is evident that this does not excuse Lyft's failure to

16   provide access to its transportation service. Plaintiffs do not seek for Lyft to provide a different

17   good or service like books in Braille. Instead, Plaintiffs seek to access the same service that Lyft

18   provides non-WAV users: on-demand, app-based transportation. Plaintiffs' Opposition at 15–17.

19           Lyft attempts to complicate the legal framework at issue in this case, but it is not

20   complicated. Plaintiffs have met their burden to establish their reasonable modifications claim

21   under Title III, and Lyft has failed to meet its burden to establish any applicable defense.

22           **D.**      **Plaintiffs Have Standing.**

23           The four individual Plaintiffs and two Organizational Plaintiffs have all established

24   standing. Lyft does not and cannot dispute any of the facts underlying Plaintiffs' standing. The

25   individual Plaintiffs are all people with disabilities who use WAVs and have been deterred from

26   using Lyft on specific occasions because they know it does not offer accessible service. At the

27   time Plaintiffs filed their complaint, Lyft offered no accessible service at all in the Bay Area.

28   Stip. ¶ 23. *See also D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1036 (9th Cir. 2008)

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

("The evidence relevant to the standing inquiry consists of 'the facts as they existed at the time the plaintiff filed the complaint.'") (citation omitted). While Lyft now offers its pilot program in San Francisco, Plaintiffs remain deterred because the pilot is so limited in geographic scope and otherwise.

The fact that Plaintiffs are deterred from accessing Lyft's services is an "actual injury" for purposes of standing. *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1042 n.5 (9th Cir. 2008); *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 950 (9th Cir. 2011) (en banc)*; see also Namisnak v. Uber Techs., Inc.*, No. 18-15860, 2020 WL 4930650, at *3 (9th Cir. Aug. 24, 2020) (finding WAV users in an almost identical situation to that facing Plaintiffs here had standing under a deterrence-based theory of injury under Title III of the ADA).

The two Organizational Plaintiffs have standing both because Lyft's failure to offer WAV service has injured the organizations and because each organization has at least one member with standing to sue in her own right. *See* Plaintiffs' Motion at 24–25.

### E.   Lyft's Concerns About the Scope of a Remedy Do Not Alter Plaintiffs' Standing.

Lyft makes two arguments against Plaintiffs' standing, both of which are unavailing. First, Lyft suggests that Plaintiffs cannot establish injury because their reasonable modification claim is insufficiently specific. That is not the case. *See supra* Section II(A), II(C).

Lyft next claims that Plaintiffs' injury is not redressable by Lyft because it is insufficiently specific, and thus any remedy would run afoul of the requirements of Rule 65 of the Federal Rules of Civil Procedure. This argument is a red herring.

First, it is clear that Plaintiffs' injury is redressable because Lyft has been able to redress it outside of the Bay Area using some of the modifications that Plaintiffs seek in this matter. *See, e.g.*, Stip. ¶¶ 18, 46. To establish standing, Plaintiffs need only show "a likelihood that the requested relief will redress the alleged injury," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998), not a literal guarantee that this will be the case.

Lyft's inability to conclusively guarantee, for example, that a given number of drivers will decide to participate in a WAV rental car partnership, cannot excuse Lyft's failure to try. For

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   example, in *Fortyune*, the Court found it was reasonable for AMC Theaters to modify its policy

2   to ensure that Plaintiff, a wheelchair user, could sit next to his companion. The Court mentioned

3   it was possible that an AMC patron could refuse to move seats when asked, but "[e]veryday [sic]

4   AMC enforces policies, both internal and state-directed, that may require resort to the proper

5   authorities. [Plaintiff's] requested policy modification, like these others, is not unreasonable on

6   the sole basis of this potentiality." *Fortyune*, 364 F.3d at 1084.

7          Lyft also misconstrues the requirements of Rule 65. It is clear from the record that the

8   problem in this case is not that Lyft does not know how to include WAVs on its platform when it

9   believes it is required to. Instead, the issue is that Lyft is fighting its obligation to even try. As

10  such, Plaintiffs believe that the parties would be able to reach a reasonable settlement in this

11  matter after a finding of liability. However, it is clearly within the power of this Court to fashion

12  a remedy in the event the parties were unable to reach a settlement. Such an injunction would

13  need to describe the acts Lyft has failed to take, such as failing to offer WAV service in Contra

14  Costa and Alameda Counties and offering vastly unequal service in San Francisco. It would then

15  be up to Lyft to determine specifically how to ensure it provides WAV users access to its on-

16  demand transportation service in the three Bay Area Counties at issue.

17         In *Fortyune*, AMC similarly argued that the injunction issued by the District Court in that

18  matter was improper under Rule 65 because it was insufficiently specific. The Court rejected

19  AMC's argument that "the district court must also elucidate *how* to enforce the injunction,"

20  noting that "Rule 65(d) does not require this of the district court." *Fortyune*, 364 F.3d at 1087.

21  The Court explained that the injunction was clear in describing the act or acts it sought to

22  restrain, namely that "it dictates that AMC must ensure that companions to wheelchair-bound

23  patrons be able to sit with their companions until ten minutes before the film begins. The

24  injunction is not, therefore, in violation of Rule 65(d), even though it declines to provide AMC

25  with explicit instructions on the appropriate means to accomplish this directive." *Id.*

26         In *Celano*, a case in which the court made a ruling on Defendant's liability and then

27  ordered the parties to attend a settlement conference to attempt to resolve the issue of the

28  appropriate remedy, the court rejected a "very similar" argument as AMC made in *Fortyune*.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    *Celano*, 2008 WL 239306, at *21. In declining to issue an injunction at the time it decided

2    liability, the Court noted that it was "disinclined to reach all of the features and precise

3    parameters advanced [by] Marriott . . . in any injunction that is entered." *Id.*; *see also Cmtys.*

4    *Actively Living Indep. & Free v. City of L.A.*, No. CV 09-0287 CBM RZX, 2011 WL 4595993, at

5    *17 (C.D. Cal. Feb. 10, 2011).

6        Thus, the Court could reach the issue of remedy in this case if it chooses to do so, and it

7    does not follow from Lyft's concerns about the contours of a future injunction against Lyft that

8    Plaintiffs have not shown a "reasonable likelihood" that Lyft could address Plaintiffs' injuries for

9    purposes of standing.

10    **III.**     **CONCLUSION**

11        Lyft's approach to WAV service is to provide WAV service when it thinks it is required

12    to do so, while maintaining that it is not required to do so by federal law. Plaintiffs are not asking

13    Lyft to do anything but provide transportation using the same methods it largely already uses to

14    provide non-WAV service, and to provide WAV service outside of the Bay Area. Nor are

15    Plaintiffs asking Lyft to spend money that would in any way endanger its vast business or

16    business model.

17        Lyft goes to great lengths to distract from this reality, but this does not change the

18    undisputed fact that Lyft could provide significantly more WAV service in the Bay Area than it

19    does now by making the reasonable modifications requested by Plaintiffs; it has the tools, it has

20    the resources, and it has decided not to. This decision to continue to discriminate has the effect of

21    excluding Plaintiffs and similarly situated people from a major source of transportation in the

22    Bay Area, in violation of the ADA's anti-discrimination mandate. Plaintiffs respectfully request

23    that the Court grant their Motion for Partial Summary Judgment.

24

25

26

27

28

1

2   DATED:  September 24, 2020            Respectfully submitted,

3

4                                        DISABILITY RIGHTS ADVOCATES

5

6

7                                        _____
                                         Rebecca C. Serbin
8                                        Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644