FOLGER LEVIN LLP
Jiyun Cameron Lee (CSB No. 161667, jlee@folgerlevin.com)
Marie Jonas (CSB No. 278952, mjonas@folgerlevin.com)
Sherri M. Hansen (CSB No. 302903, shansen@folgerlevin.com)
199 Fremont Street, 20th Floor
San Francisco, CA 94105
Telephone: 415.625.1050
Facsimile: 415.625.1091

Attorneys for Defendant LYFT, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

INDEPENDENT LIVING RESOURCE CENTER SAN FRANCISCO, a California non-profit corporation, JUDITH SMITH, an individual, JULIE FULLER, an individual, SASCHA BITTNER, an individual, TARA AYRES, an individual, and COMMUNITY RESOURCES FOR INDEPENDENT LIVING, a California non-profit corporation,

Plaintiffs,

v.

LYFT, Inc., a Delaware corporation,

Defendant.

Case No. 3:19-cv-01438-WHA

**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Date: October 8, 2020
Time: 8:00 a.m.
Courtroom: 12 – 19th Floor

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 3

A. Plaintiffs' Opposition Is Based On A Faulty Interpretation Of The ADA ..... 3

B. Plaintiffs Cannot Identify A Reasonable Modification Of A Policy, Practice, Or Procedure That Would Unlock A Supply Of WAVs On The Lyft Platform ..... 6

1. Based On The Uncontested Facts, Plaintiffs Cannot State A Claim Of Discrimination Because There Is No Evidence Of A Sufficient Supply Of WAV Drivers Willing To Drive On The Lyft Platform ..... 7

2. Plaintiffs' Opposition Confirms That They Cannot Produce Any Probative Evidence Of Reasonableness Or Effectiveness Of The Partner Or Rental Models To Support Their Claim ..... 9

a. That Lyft Offers Access Mode In Other Cities Is Not Sufficient To Satisfy Plaintiffs' Burden Of Production, Absent Evidence That Those Models Would Be Reasonable And Effective Here ..... 9

b. Plaintiffs Studiously Avoid Any Discussion Of The Cost Of The Partner And Rental Models Because They Know The Cost Is Not Reasonable ..... 11

C. Requiring Lyft To Create A Supply Of Vehicles That Does Not Exist Is A Fundamental Alteration ..... 13

D. Plaintiffs' Opposition Confirms They Cannot Establish Standing ..... 14

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) ........ 7

*Celano v. Marriott Int'l, Inc.*
Case No. C 05-4004 PJH, 2008 U.S. Dist. LEXIS 6172 (N.D. Cal. January 28, 2008) ........ 6, 7, 9, 10, 15

*Chapman v. Pier 1 Imports (U.S.), Inc.*
631 F.3d 939 (9th Cir. 2011) ........ 14

*Doe v. Mut. of Omaha Ins. Co.*
179 F.3d 557 (7th Cir. 1999) ........ 6

*Domino's Pizza, LLC v. Robles*
140 S. Ct. 122 (2019) ........ 4

*Fortyune v. Am. Multi-Cinema, Inc.*
364 F.3d 1075 (9th Cir. 2004) ........ 10, 15

*Galvez v. Auto. Club of S. Cal.*
No. SA CV 16-0887-DOC (KESx), 2017 U.S. Dist. LEXIS 214650 (C.D. Cal. May 5, 2017) ........ 6, 9

*Namisnak v. Uber Techs.*
No. 17-CV-060124-RS, 2018 U.S. Dist. LEXIS 221054 (N.D. Cal. Oct. 3, 2018) ........ 4, 10

*O'Byrne v. Reed*
No. CV 09-08406 DMG (DTBx), 2010 U.S. Dist. LEXIS 153617 (C.D. Cal. Feb. 5, 2010) ........ 11

*Ormeno v. Pasha Auto. Servs.*
444 F. Supp. 3d 1129 (N.D. Cal. 2020) ........ 10

*Robles v. Domino's Pizza, LLC*
913 F.3d 898 (9th Cir. 2018) ........ 4

*Smolen v. Deloitte, Haskins & Sells*
921 F.2d 959 (9th Cir. 1990) ........ 9

*Toomer v. City Cab*
443 F.3d 1191 (10th Cir. 2006) ........ 4

*Wong v. Regents of the Univ. Of Cal.*
192 F.3d 807 (9th Cir. 1999) ........ 6

**Statutes**

42 U.S.C. § 12182 ........ 6, 14, 15

42 U.S.C. § 12184 ........ 14, 15

**Other Authorities**

49 C.F.R. Part. 37, Appendix D ........ 14

49 C.F.R. Part 37, Appendix E ........ 13

**Rules**

Fed. R. Civ. P. 56 ........ 7

## I. INTRODUCTION

Plaintiffs' Opposition to Defendant's Motion for Summary Judgment [Dkt. 72] ("Opposition" or "Oppo.") makes clear that Plaintiffs lack the evidence to defeat Lyft's motion. This comes as no surprise, because it is uncontested that Lyft's ridesharing platform is premised on density of supply and demand, and there is no evidence of either density of demand or supply for wheelchair accessible vehicles ("WAVs"). These are the uncontested facts:

- Lyft's ridesharing platform depends on basic supply and demand economics. When there is high, concentrated demand in a geographic area, the platform is more attractive to drivers, and riders often experience shorter wait times. The platform thus performs best in areas of high population density, such as the City of San Francisco.
- On Lyft's ridesharing platform, drivers drive their personal vehicles, whether owned, leased, or rented. Except in the case of WAVs, Lyft does not subsidize the acquisition of vehicles by third parties to be rented and driven on the Lyft platform.
- Except in the case of WAVs, there is no evidence that Lyft contracts with third party companies to provide both vehicles and drivers for its platform.
- There is no evidence of a high density of demand by riders who rely on WAVs. To the contrary, the only available evidence is that the total population of potential WAV users across San Francisco, Alameda, and Contra Costa Counties (the "Bay Area Counties") is approximately 22,000, or about 15 people per square mile. In order to sustain a ridesharing platform comparable to Lyft's, *every single one of the 22,000 people would need to take at least 2.5 WAV rides each day with Lyft* – as opposed to with BART, MUNI, paratransit, WAV taxi providers, or Uber.
- To deliver average wait times comparable to Lyft's Standard mode throughout the Bay Area Counties, there would have to be *approximately 1,300 drivers driving WAVs on the Lyft platform every hour of every day*. But there is *zero* evidence of the number of WAV drivers who are, or might be, willing to drive on the Lyft

> platform in the Bay Area Counties. And there is certainly no evidence that there are 1,300, such WAV drivers (or even 13), never mind for every hour of every day.

Lacking such critical evidence, Plaintiffs obfuscate by refusing to identify the "reasonable modification" of a policy, practice, or procedure they consider necessary to give them the "on-demand, when-they-need-it, where-they-need-it" WAV service they demand. *See* Oppo. at 1:7. But identifying the necessary and reasonable modification is a critical element of their claim. Without it, Plaintiffs cannot state a claim of discrimination under the ADA because nothing in the statute imposes an obligation on Lyft to provide WAVs.

The Court should grant Lyft's Motion for the following reasons:

*First*, Plaintiffs' interpretation of the ADA contradicts the language of the statute and established case law. Importantly, the ADA does *not* require private entities to offer WAV service, nor does it require private entities to take whatever steps are necessary to ensure "full and equal access" to WAVs for individuals with disabilities. As numerous courts have repeatedly affirmed, the ADA "does not require the provision of different goods or services, just nondiscriminatory enjoyment of those that are provided." *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1115 (9th Cir. 2000).

*Second*, Plaintiffs cannot establish their prima facie case based on the plain language of the "reasonable modification" provision of the ADA and the uncontested facts. It is factually impossible for Plaintiffs to do so because there is no evidence of thousands, or even dozens, of drivers with WAVs who want to or could drive on Lyft's platform. Absent evidence of such a density of WAV drivers, no "reasonable modification" – be it of advertisements or incentives – can achieve Plaintiffs' stated goal of "on-demand, when-they-need-it, where-they-need-it" WAV service (Oppo. at 1:7) comparable to Lyft's Standard mode.

*Third*, even if requiring Lyft to implement Partner and Rental models can be deemed to be a "modification" of a "policy, practice, or procedure" —which it is not—Plaintiffs have failed to submit any evidence to support their claim that such purported "modifications," which would cost untold millions in perpetuity, would be reasonable or effective.

*Fourth*, Plaintiffs' argument that offering WAV cannot be a fundamental alteration because Lyft already employs the Partner and Rental models elsewhere belies Lyft's actual experience implementing those models in response to local regulations. That experience has demonstrated the exorbitant cost of creating a supply of WAV vehicles. As a matter of law, it *is* a fundamental alteration to require a private entity to create a supply of specialized vehicles that does not otherwise exist, regardless of the cost. Moreover, that Lyft may voluntarily undertake a WAV program in response to local regulation, as it did in San Francisco and Los Angeles, does not change the elements of the ADA. If that were the law, no company would ever experiment or innovate to see if they can improve services for individuals with disabilities.

*Fifth*, because Plaintiffs cannot identify the conduct they deem to be discriminatory, Plaintiffs cannot establish a cognizable or redressable injury. Nothing in the ADA deems it a violation of the law for a private entity to "fail to try" various strategies, regardless of whether those strategies are reasonable or would be effective. Under Rule 65 of the Federal Rules of Civil Procedure and the ADA, this Court cannot issue an injunction ordering Lyft to "try" to provide WAV service by whatever means necessary.

In the 30 years since the ADA was enacted, no court has ever held that a private entity must do whatever it takes to provide a specialized good or service tailored to meet the needs of individuals with disabilities. If Plaintiffs' legal theory is upheld, bookstores will have to stock every title in Braille, and taxi companies would have to offer WAVs on an equal basis as it offers standard taxis. This is not the law. The ADA does not require private entities to create specialized goods or services that it does not already offer, and the Court should reject Plaintiffs' attempt to impose such a burden on Lyft.

The Court should grant Lyft's Motion for Summary Judgment.

## II. ARGUMENT

### A. Plaintiffs' Opposition Is Based On A Faulty Interpretation Of The ADA.

Plaintiffs' Opposition is grounded in the assumption that Title III of the ADA requires Lyft to provide WAV service. *See, e.g.*, Oppo. at 2:21-22 ("Lyft's failure to take essentially any steps of any kind to provide WAV service in the Bay Area violates Title III of the ADA"). But

that assumption is flatly contrary to the statutory language and established case law. Therefore, Plaintiffs construe the ADA in a manner that distorts Title III of the ADA in at least three ways.

*First*, Plaintiffs begin their analysis from the premise that Lyft is subject to the transportation provision of the ADA,[1] 42 U.S.C. § 12184, but then claim that the critical subsection (b)(3), which exempts private entities from having to purchase or lease WAVs as long as they acquire sedans or small vans to be used in a demand-responsive transportation system, is "inapplicable" because Lyft does not own or lease the vehicles that are driven on its platform. Oppo. at 15:12-23. There is no question that Section 12184(b)(3), which confirms Congress's desire *not* to burden private entities with the enormous cost of WAVs, directly applies to Plaintiffs' claim. As the Tenth Circuit Court of Appeals explained in *Toomer v. City Cab*, 443 F.3d 1191, 1195 (10th Cir. 2006):

> [T]he ADA does not seek to equalize without exception. The ADA does not require all accommodation at any cost for all disabilities. . . . The ADA does not mandate that all private transportation entities provide accessible vehicles — a taxi fleet consisting entirely of non-accessible vehicles would be in accord with the ADA. *See* 42 U.S.C. § 12184(b)(3). Witness testimony before Congress preceding the passage of the ADA recognized that costs were a consideration in determining which facilities had to be accessible, and what changes had to be made, and Congress balanced accordingly. H.R. Rep. 101-485(II), at 35-36 (1990); *see also* 42 U.S.C. § 12182(b)(2)(A)(iv) (requirement that barriers be removed when readily achievable). These limitations demonstrate that the ADA is more nuanced than [plaintiff] suggests.

Plaintiffs' attempt to dismiss Section 12184(b)(3) as inapplicable to this case, in which they also seek to impose the staggering cost of WAVs on Lyft, is not viable.

*Second*, Plaintiffs' attempt to distinguish this case from *Weyer v. Twentieth Century Fox*

---

[1] As Lyft stated in its opening brief, it is not seeking summary judgment on the issue of whether it is subject to the ADA. Lyft reserves the right to argue, at trial if it becomes necessary, that it is not an entity that is "primarily engaged in the business of transporting people" or that operates a place of public accommodation. *See* Motion at 12, fn. 5. However, Lyft must correct Plaintiffs' failure to cite controlling authority on the issue of whether Lyft operates a place of public accommodation. The Ninth Circuit has repeatedly held that the ADA only covers "actual, physical places" where goods and services are made available to the public. *Robles v. Domino's Pizza, LLC,* 913 F.3d 898, 905 (9th Cir. 2018), *cert. denied*, *Domino's Pizza, LLC v. Robles*, 140 S. Ct. 122 (2019) (quoting *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000)); *see also Namisnak v. Uber Techs.*, No. 17-CV-060124-RS, 2018 U.S. Dist. LEXIS 221054, at *10 (N.D. Cal. Oct. 3, 2018) (finding that Uber's platform is not a place of public accommodation under the ADA).

*Film Corp.*, 198 F.3d 1104, 1115 (9th Cir. 2000), and other authorities in which courts have ruled that the ADA "does not require provision of different goods or services, just nondiscriminatory enjoyment of those that are provided," fails because WAVs are indeed different "goods or services."[2] In order to distinguish *Weyer*, Plaintiffs claim that cases in which a plaintiff seeks a different good or service – such as Braille books – are fundamentally different than this one, because what Plaintiffs seek here is "the *same service* that Lyft provides non-WAV users: on-demand, app-based transportation." Oppo. at 17:6-7 (emphasis added). But there is no rational distinction between seeking Braille books from a book store that does not sell Braille books and seeking WAVs from a ridesharing platform that does not have a supply of WAVs on it; visually-impaired readers who need Braille books "seek" books, just as Plaintiffs claim to "seek" on-demand rides.

*Third*, Plaintiffs rewrite the "reasonable modification" provision of the ADA altogether, and claim that the provision requires private entities to reasonably modify policies, practices, or procedures "to achieve full and equal access for people with disabilities." Oppo. at 4:24; *see also* Oppo. at 1:16-18 ("Lyft must make reasonable modifications to its on-demand transportation service where necessary to ensure persons with disabilities have access to that service"). By Plaintiffs' logic, "reasonable modification" means that if Lyft's platform does not have WAVs on it, Lyft must categorically find a way to add them.

Section 12182(b)(2)(A)(ii) nowhere states that Lyft must make "reasonable modifications" "to achieve full and equal access for people with disabilities." What the section actually states is that private entities engage in discrimination when they fail "to make reasonable modifications in policies, practices, or procedures, *when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities*." (Emphasis added.) The focus of the provision is nondiscriminatory enjoyment

[2] Astonishingly, Plaintiffs' leading argument as to why *Weyer* does not apply is because Section 12184, as opposed to Section 12182, "contains no reference to goods or services." Oppo. at 16:24-17:3. Plaintiffs should read the statute: Section 12184(b)(2)(A) specifically defines as discrimination the failure of an entity to "make reasonable modifications consistent with those required under section 12182(b)(2)(A)(ii)," which is the very provision that refers to goods or services.

of the goods or services that an entity *already* offers, and does not require provision of new goods or services tailored to meet the needs of people with disabilities. *Weyer*, 198 F.3d at 1115; *Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999).

The Court should reject Plaintiffs' attempt to use Section 12182(b)(2)(A)(ii) to effect a wholesale expansion of Lyft's business. As the court stated in *Celano v. Marriott Int'l, Inc.*, Case No. C 05-4004 PJH, 2008 U.S. Dist. LEXIS 6172, *38 (N.D. Cal. January 28, 2008), "[w]ithin reason, a public accommodation may be required to modify its policies, practices, or procedures to mitigate any disparate impact upon persons with disabilities." Here, Plaintiffs seek to have Lyft create a fleet of WAVs and pay for them, regardless of cost. This is not "within reason," and neither is Plaintiffs' interpretation of the ADA.[3]

### B. Plaintiffs Cannot Identify A Reasonable Modification Of A Policy, Practice, Or Procedure That Would Unlock A Supply Of WAVs On The Lyft Platform.

By its Motion, Lyft established that Plaintiffs' failure to identify any allegedly discriminatory policy, practice, or procedure that, if modified, would result in WAV service on Lyft's platform, is dispositive. *Wong v. Regents of the Univ. Of Cal.*, 192 F.3d 807, 816 (9th Cir. 1999) (plaintiff bears the burden of producing evidence of a reasonable modification); *Galvez v. Auto. Club of S. Cal.*, No. SA CV 16-0887-DOC (KESx), 2017 U.S. Dist. LEXIS 214650, at *17 (C.D. Cal. May 5, 2017) (while the plaintiff "has shown that he may have requested a policy change from Defendant . . . it is unclear *what* modification Plaintiff is actually requesting. At [the summary judgment stage] in the proceedings, this is fatal to Plaintiff's ADA claim."). Despite being on notice of Lyft's position and the law, Plaintiffs failed to make any effort in their

[3] One provision Plaintiffs did not address is 42 U.S.C. § 12182(b)(2)(A)(iv), which is the basis for their theory that Lyft failed to remove "transportation barriers." As Lyft pointed out in its Motion on page 13, footnote 6, the alleged failure by Lyft to remove transportation barriers is not cognizable because Section 12182(b)(2)(A)(iv) itself exempts "barriers that can only be removed through the retrofitting of vehicles" by installing a lift from the definition of "transportation barriers." Plaintiffs nonetheless claim that Lyft has not moved for summary judgment on this transportation barrier theory. Oppo. at 3, fn. 1. Plaintiffs' claim is nonsense; Lyft moved for summary judgment of the entire case, as made clear in its Motion. In addition, Plaintiffs' suggestion that the "Wheelchair Access" toggle feature in the Lyft app is a transportation barrier also makes no sense. Toggling to "Wheelchair Access" mode is an app design issue that has nothing to do with whether or not there exists a supply of WAVs on the platform. Moreover, none of the named Plaintiffs have downloaded the app.

Opposition to "set forth specific facts showing that there is some genuine issue for trial" on the issue of the reasonable modification they are requesting. *Celano*, 2008 U.S. Dist. LEXIS 6172 at *5 (citing Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

Rather than tie themselves to a specific policy or practice to be modified, Plaintiffs attempt an argumentative sleight of hand. They state that the discriminatory policy is Lyft's use of "a variety of practices to build and maintain its transportation service, including using advertising, driver incentives, and partnerships with rental car companies," *see* Oppo. at 5:18-6:2, but then assert "Lyft *could* provide WAV service in the Bay Area through a contract like the one it currently has with First Transit to provide the San Francisco pilot program." *Id.* at 6:6-9 (emphasis added). This reveals the contradiction in their position. On the one hand, Plaintiffs know modifications to advertising and incentives are ineffective because of the lack of supply and demand. On the other hand, they know mandating contracts with third party providers is not a modification to a policy, practice, or procedure, or reasonable.

What is fatal to Plaintiffs' case is that no reasonable modification to a policy, practice, or procedure can result in the relief they seek – comparable wait times and 24/7 on-demand WAV service on the Lyft platform. Plaintiffs should not be permitted to ignore reality or avoid their burden by refusing to identify the modification they claim would end the purported discrimination. Oppo. at 6:3-5.

#### 1. Based On The Uncontested Facts, Plaintiffs Cannot State A Claim Of Discrimination Because There Is No Evidence Of A Sufficient Supply Of WAV Drivers Willing To Drive On The Lyft Platform.

Any case for a reasonable modification of Lyft's ridesharing platform depends on the availability of both supply and demand. The uncontested facts make it clear that under the plain language of Section 12182(b)(2)(A)(ii), Plaintiffs *cannot* state a prima facie case of discrimination because they have no evidence that there are thousands, or even dozens, of WAV drivers in the Bay Area Counties who want to and could drive on the Lyft platform.

As discussed above and in Lyft's Motion, Lyft's ridesharing platform depends on density of supply and demand. Even if Lyft attempted to provide "nondiscriminatory enjoyment" of that platform by, for example opening up the platform to independent contractor drivers with personal

WAVs or offering incentives to such drivers, there is no evidence this would lead to any WAVs on the platform, let alone in adequate or sufficient quantities. *See* Declaration of Isabella Gerundio [Dkt. No. 68-2] ("9/03/20 Gerundio Decl.") at ¶¶ 7, 21; *see also* Rysman Report (Ex. 22 to Declaration of Jiyun Cameron Lee [Dkt. 68-4] "Lee Decl.")) at 7-8, 14, 26-27.

While Plaintiffs vaguely reference advertisements and incentives, they fail to identify the contours of how such advertisements and incentives could be modified to unlock a supply of WAVs. For example, Plaintiffs do not demonstrate or even suggest that a $100 ride-streak bonus and a social media pop-up could lead drivers with WAVs to join the platform in sufficient numbers. *Cf.* Declaration of Edward Niedermeyer In Support of Defendant's Motion [Dkt. 68-3] ¶¶ 12-17. Plaintiffs identify no such contours of reasonable modifications, for obvious reasons: it defies logic that any such incentive or pop-up could unlock a supply of WAV drivers when there is no evidence that a supply exists in the first place.[4]

The uncontradicted expert evidence is that to provide comparable service, Lyft would need 1,300 WAV drivers on the platform every hour of every day.[5] Rysman Report (Ex. 22 to Declaration of Jiyun Cameron Lee [Dkt. 68-4] "Lee Decl.")) at 29. There is no evidence that Lyft could find anything approaching such a supply of independent contractor WAV drivers in the Bay Area Counties. Therefore, based on the plain language of the ADA and the uncontested evidence,

---

[4] Plaintiffs imply that Lyft has cracked the code when it comes to providing WAV service in certain markets through independent contractor drivers motivated by incentives. Clearly it has not: the evidence is that Lyft's reliance on independent contractor drivers in other markets depends on uniquely local circumstances and is not replicable on a broad scale. 9/03/20 Gerundio Decl. ¶¶ 7-8; Gerundio Oppo. Decl. ¶ 13. Moreover, in every single market where there are ETA requirements, Lyft has found it *must* use the Partner model at least in part, because the Partner model gives it greater control over WAV service levels. 9/03/20 Gerundio Decl. ¶ 9.

[5] Plaintiffs take issue with Lyft's expert, Dr. Marc Rysman, criticizing him for, among other things, failing to analyze the number of rides that would be required to provide six, eight, or fifteen-minute wait times. Oppo. at 10:17-11:10. But Plaintiffs have insisted on "full and equal" access, suggesting in their Motion for Partial Summary Judgment [Dkt. 64] at page 5 that a wait time of [redacted] minutes was not adequate. While Plaintiffs now state they "do not seek perfection and are willing to consider slightly longer wait times if the provision of identical wait times is not feasible through reasonable modifications to Lyft's practices" (Oppo. at 11:25-26), Plaintiffs offer no evidence of what such wait times are, how many drivers would be needed to deliver such wait times, or whether that number of WAV drivers can be found in the Bay Area Counties. Without such evidence, Plaintiffs cannot establish a prima facie case of discrimination based on Lyft's alleged failure to make reasonable modifications.

Lyft is entitled to summary judgment.

**2. Plaintiffs' Opposition Confirms That They Cannot Produce Any Probative Evidence Of Reasonableness Or Effectiveness Of The Partner Or Rental Models To Support Their Claim.**

As demonstrated above in Part II.B.1, the Organic Driver model is factually impossible because there is no evidence of a sufficient number of independent WAV drivers available in the Bay Area Counties to generate *any* service – let alone five-minute wait times.[6] As for the Partner and Rental models, these are not "reasonable modifications of policies, practices, or procedures," as they require an expansion of Lyft's business through third-party contracts. However, even if they are considered to be purported "modifications of policies, practices, or procedures," Plaintiffs have not come forward with any evidence in their Opposition to create a genuine issue of disputed fact that these models are reasonable or effective.

"A party cannot create a genuine issue of material fact simply by making assertions in its legal papers." *Galvez*, 2017 U.S. Dist. LEXIS 214650 at *16-17 (citation omitted). "To show the existence of a 'genuine' issue, . . . [a plaintiff] must produce at least some significant probative evidence tending to support the complaint." *Celano*, 2008 U.S. Dist. LEXIS 6172 at *5 (quoting *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990)). Here, Plaintiffs have failed to produce *any* evidence to support their claim that the Partner or Rental models would be reasonable *or* effective.

**a. That Lyft Offers Access Mode In Other Cities Is Not Sufficient To Satisfy Plaintiffs' Burden Of Production, Absent Evidence That Those Models Would Be Reasonable And Effective Here.**

In their Opposition, Plaintiffs try to satisfy their burden of production by pointing to the fact that Lyft offers Partner and Rental models in other cities where it offers Access Mode. *See, e.g.*, Oppo. at 5:17-6:10, 9:20-10:10. But that Lyft has implemented these models in other cities in response to local regulation in those cities is not "significant probative evidence" tending to

[6] Plaintiffs also offer no evidence as to how Lyft can or should handle operational challenges unique to offering WAVs on the platform through independent contractor drivers, including, for example, how these drivers would be trained to provide WAV service, who would inspect the wheelchair ramp or lift installed on the vehicle, or how often such inspections should occur.

support Plaintiffs' argument that those models would be reasonable and effective if implemented in the Bay Area Counties.

The evidence is that Lyft decides which model to implement based on market needs and regulations unique to that location. Stipulation Re: Facts and Authenticity of Documents [Dkt. 68-1] ("Stip.") ¶¶ 15-17; 9/02/20 Gerundio Decl. ¶¶ 6-9. As Plaintiffs admit, "the determination of whether a particular modification is 'reasonable' involves a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it." Oppo. at 8:1-6 (quoting *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1083 (9th Cir. 2004)). If Plaintiffs believe that the particular model(s) Lyft undertook to implement Access Mode in Chicago, New York City, or any other city, could be reasonable and effective throughout the 1,500 square mile area comprising the Bay Area Counties, Plaintiffs should have submitted "significant probative evidence" in support of their belief.

Here, they have not submitted any such evidence. The evidence is that in New York City, Lyft spent the sum of [redacted] in February 2020 alone (annualized to equal [redacted]). *See* Stip. ¶ 48. In Chicago, the evidence is that the City of Chicago facilitated a partnership that helped onboard WAV taxis onto the Lyft platform. Stip. ¶ 22. Plaintiffs offer no evidence of such a partnership, facilitated by a regulator or public agency, being available here. *See* Declaration of Isabella Gerundio in Support of Lyft's Opposition [Dkt. 75-2] ("Gerundio Oppo. Decl.") ¶ 12.

Lacking any evidence, Plaintiffs cite *Namisnak v. Uber Techs., Inc.*, Case No. 17-CV-06124-RS, 2020 U.S. Dist. LEXIS 48091 (N.D. Cal., March 13, 2020),[7] and *Celano*, 2008 U.S. Dist. LEXIS 6172, in support of their argument that they have satisfied their burden of producing evidence by pointing to Lyft's efforts in other cities. Oppo. at 8:17-9:18. *Namisnak* and *Celano*, however, do not help Plaintiffs' case. *Namisnak* was a decision on a motion to dismiss, and the court explicitly stated in its decision that Uber may challenge the reasonableness of plaintiffs' requested modification at a later stage. 2020 U.S. Dist. LEXIS 48091 at *11. As for *Celano*,

[7] Plaintiffs cited to this case as 444 F. Supp.3d 1136. This is an error. *See Ormeno v. Pasha Auto. Servs.*, 444 F. Supp. 3d 1129 (N.D. Cal. 2020).

while the plaintiffs in that case put forth evidence of a pilot program that the court ultimately found to be reasonable, the defendant never contested the reasonableness of the pilot based on cost, conceding at the hearing that the cost of the pilot was "minimal." 2008 U.S. Dist. LEXIS 6172 at *41.

There is no basis in the law for holding that the actions taken by Lyft in response to local regulatory requirements or as pilot programs should establish the floor of what is required as a "reasonable modification." In some markets, Lyft takes extraordinary measures to offer Access mode because it is required to do so (*see* 9/03/20 Gerundio Decl. ¶¶ 11-13), and these local laws do not change the elements of the ADA. In other markets, Lyft has voluntarily undertaken pilot programs to gather information and test their efficacy. *See* Gerundio Oppo. Decl. ¶¶ 4-7. If the Court were to hold that Lyft's pilot programs are therefore *de facto* "reasonable modifications," then Lyft would never again experiment or innovate to see if it could improve Access mode or lower its costs. *See O'Byrne v. Reed*, No. CV 09-08406 DMG (DTBx), 2010 U.S. Dist. LEXIS 153617, at *16 (C.D. Cal. Feb. 5, 2010) (requiring entities to continue voluntary programs that go beyond a statutory duty would create a "perverse incentive" to discourage such activities).

Plaintiffs therefore cannot simply point to Lyft's efforts to implement Access mode elsewhere, but must produce "some significant probative evidence tending to support" their claim that the actions Lyft took in New York, Chicago, or some other city would be reasonable and effective here. *Id.*, 2008 U.S. Dist. LEXIS 6172 at *5. This they have not done, nor can they.

#### b. Plaintiffs Studiously Avoid Any Discussion Of The Cost Of The Partner And Rental Models Because They Know The Cost Is Not Reasonable.

Tellingly, Plaintiffs' Opposition avoids any discussion of the cost of either the Partner or Rental model. The reason for Plaintiffs' omission is obvious: the cost is not reasonable.

In San Francisco, the Partner model costs Lyft over [REDACTED] per vehicle, per year. *See* Stip. ¶ 23; 9/03/20 Gerundio Decl. ¶ 15. While Plaintiffs suggest that Lyft could lower these costs, Plaintiffs offer no evidence of what the lower cost may be. [REDACTED]

[REDACTED]. *See* Gerundio Oppo. Decl. ¶¶ 10-11. Plaintiffs also proffer no evidence as to how many Partner vehicles will be needed to provide a level of service satisfactory to them throughout the 1,500 square mile area at issue.

As for the Rental model,[8] the uncontested evidence is that in the month of February 2020, Lyft spent approximately [REDACTED] on its partnership with a rental car company in New York City. Stip. ¶ 48. Annualized, the cost is almost [REDACTED]. For its 65-vehicle Rental pilot in the Bay Area Counties, Lyft had expected to spend [REDACTED] per month per vehicle, for the total annualized sum of approximately [REDACTED]. Stip. ¶ 40. With driver incentives, Lyft expected to spend [REDACTED] on the Rental pilot. Ren Decl. ¶ 10. As with the Partner model, Plaintiffs have proffered no evidence as to how many Rental model vehicles will be needed to provide a level of service that they deem to be satisfactory throughout the Bay Area Counties.

While Plaintiffs suggest these costs would not burden Lyft because "Lyft is a multi-billion dollar, publicly traded company" (Oppo. at 10:14), Plaintiffs overlook the fact that they have not given the Court sufficient evidence to determine what the actual cost would be, or how such cost would compare to the amount Lyft spends or earns in the Bay Area Counties. No court has ever held that as long as the defendant is a "multi-billion dollar, publicly traded company," the cost of any purported modification should be deemed reasonable even if it is a recurring cost that will add up to untold millions of dollars over time.[9]

---

[8] Plaintiffs misleadingly suggest that Lyft's expert, Dr. Rysman, testified the Rental model to be a reasonable modification. *See, e.g.*, Oppo. at 10:1-4. As a review of the excerpt of his deposition testimony will confirm, Dr. Rysman said nothing of the kind. He did not offer any testimony or opinion concerning the Rental model. Seaborn Decl. [Dkt. 72-1] at Ex. U, Rysman Depo. 14:15-15:20, 34:19-35:10. To the extent Plaintiffs claim that the Rental mode is no different from Lyft's Express Drive program (which allows independent contractor drivers to rent a car from a third-party rental car company to drive on the Lyft platform), this, too, is false. A significant challenge for the Rental pilot that Lyft considered launching in the Bay Area was that major rental car companies do not have WAVs in their rental fleets. What this meant was that the WAVs to be used in the Rental pilot had to be specially procured and retrofitted. This is a significant departure from the Express Drive program, which makes standard automobiles of the type found at car dealerships and typical rental car fleets available for rent. Declaration of Audrey Ren in Support of Lyft's Opposition [Dkt. 75-3] ("Ren Decl.") ¶¶ 7-9.

[9] Plaintiffs argue that Lyft cannot establish the undue burden affirmative defense. Lyft is not relying on that affirmative defense because Plaintiffs no longer base their claim of discrimination on the alleged failure to provide auxiliary aids or services.

The fact is that WAVs are rare, and that the Partner and Rental models are expensive because Lyft is, in essence, paying to create a supply of these vehicles. Because Plaintiffs have failed to come forward with any evidence that the Partner or Rental models would be reasonable or effective in the Bay Area Counties, Lyft's Motion should be granted.

### C. Requiring Lyft To Create A Supply Of Vehicles That Does Not Exist Is A Fundamental Alteration.

Plaintiffs admit "Lyft provides an app-based, on-demand transportation service," but claim that they "are not asking Lyft to change the type of service they provide" by asking for WAVs. Oppo. at 13:15-16. Plaintiffs ignore reality: the evidence establishes that the service they seek – WAVs 24-hours a day, seven-days a week, across 1,500 square miles, with minimal wait times – is one that can only be delivered in the Bay Area Counties through expensive third-party contracts that Lyft does not utilize in connection with anything else on its ridesharing platform. As a matter of law, Plaintiffs demand a fundamental alteration. *See* 49 C.F.R. Part 37, Appendix E (describing requests for special equipment or dedicated vehicles as a fundamental alteration).

Plaintiffs attempt to contradict the fact that the only reliable way Lyft has found to provide WAV service is through the Partner model. Oppo. at 14:14-17. However, one of the stipulated facts on this Motion is that "[i]n markets with waiting time ("ETA") requirements set by regulation, Lyft relies at least in part on a 'Partner' model so that it can meet the regulatory requirements." Stip. ¶ 17. Lyft does this because drivers on the Lyft platform are independent contractors who choose where and when to drive. 9/03/20 Gerundio Decl. ¶ 9. It is only through contracts with third party partners that Lyft can ensure WAVs will be on the platform during all hours of service, and position WAVs in certain prime locations to lower ETAs for riders. *Id.* In short, unless Lyft uses the Partner model, Plaintiffs will not experience Access mode that meets the reliability standards they demand.

Plaintiffs cannot create a disputed issue of fact with argument. Based on the uncontested evidence, the Court should hold that Plaintiffs' request to have Lyft create a supply of WAVs to be a fundamental alteration.

**D. Plaintiffs' Opposition Confirms They Cannot Establish Standing.**

Finally, the Opposition confirms Lyft is entitled to summary judgment because Plaintiffs cannot establish standing. Plaintiffs' arguments on standing are based not on evidence, but on flawed legal arguments.

*First*, Plaintiffs' claim of injury is based on the premise that the "individual Plaintiffs are all people with disabilities who use WAVs and have been deterred from using Lyft on specific occasions because they know it does not offer accessible service." Oppo. at 18:15-16. But this presumes that Lyft has an obligation to provide WAVs. It does not. *See* Part II.A, *supra.* As the Ninth Circuit stated in *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 947 (9th Cir. 2011), the "standing analysis must focus on the nature and source of [plaintiff's] claim – discrimination as defined by the ADA." The discriminatory act alleged against Lyft is that it failed to make a reasonable modification to a policy, practice, or procedure. Plaintiffs, however, have refused to identify the reasonable modification.

*Second*, as for redressability, Plaintiffs take the extraordinary position that all that would be required under Rule 65 is for this Court to issue an injunction "describ[ing] the acts Lyft has failed to take, such as failing to offer WAV service in Contra Costa or Alameda Counties and offering vastly unequal service in San Francisco. It would then be up to Lyft to determine specifically how to ensure it provides WAV users access to its on-demand transportation service in the three Bay Area Counties at issue." Oppo. at 20:7-11.[10] Plaintiffs thus ask this Court to declare that Lyft has violated the ADA by failing to offer WAV service. But the Court cannot issue an injunction on that ground because the ADA does not require private entities to offer WAV service. *See* 42 U.S.C. §§ 12184(b)(3), 12182(b)(2)(A)(iv). "Under the ADA, *no private entity is required to purchase an accessible automobile*." 49 C.F.R. Pt. 37, App'x D (emphasis added).

---

[10] Plaintiffs ask the Court to issue such an injunction if the parties are unable to reach a reasonable settlement after the Court finds Lyft "liable." Oppo. at 20:4-6. Plaintiffs' request is absurd. The parties previously engaged in settlement efforts in response to this Court's order. Plaintiffs cannot bypass their legal obligation to demonstrate redressability of their injury by promising to be reasonable in settlement discussions that may never occur.

This case is a far cry from cases like *Fortyune*, in which the reasonable modification was that "AMC must ensure that companions to wheelchair-bound patrons be able to sit with their companions until ten minutes before the film begins." 364 F.3d at 1087. Similarly, this case is nothing like *Celano*, in which the court determined that the necessary reasonable modification was the provision of at least one accessible golf cart at each of Marriott-owned or operated golf courses. 2008 U.S. Dist. LEXIS 6172, *50-51. Here, the Court (and Lyft) has no idea what "modification" will result in the requisite number of WAVs on the Lyft platform to ensure Plaintiffs the level of service they want, whether such modification would be "reasonable," and thus what legal violation it is trying to remedy by injunction.

Based on the claim pled by Plaintiffs in their Complaint, the only way this Court can declare Lyft to have engaged in discrimination under the ADA is by identifying the specific reasonable modification of a policy, practice, or procedure, which, if implemented, would result in WAV service on the Lyft platform. 42 U.S.C. §§ 12184(b)(2)(A), 12182(b)(2)(A)(ii). Because Plaintiffs have not identified the reasonable modification they seek, this Court cannot redress their alleged injury. Plaintiffs lack standing, and the Court should grant Lyft's Motion.

## III. CONCLUSION

The ADA does not require private entities to provide WAVs, and it is not a "reasonable modification" of a policy, practice, or procedure to require a private entity to undertake the enormous cost of creating a supply of WAVs.

Based on Plaintiffs' failure to establish the necessary elements of their claim, Lyft respectfully requests that the Court grant this Motion for Summary Judgment and enter judgment in its favor.

Dated: September 24, 2020

FOLGER LEVIN LLP

*/s/ Jiyun Cameron Lee*

Jiyun Cameron Lee
Attorneys for Defendant
LYFT, INC.

1079742.6